THORNTON, APPELLANT, *v.* SALAK ET AL., APPELLEES.

[Cite as *Thornton v. Salak,*
112 Ohio St.3d 254, 2006-Ohio-6407.]

(No. 2005–0880—Submitted March 28, 2006—Decided December 13, 2006.)

O'DONNELL, J.

{¶ 1} The issue accepted for review on this appeal concerns the effective date of Am.Sub.S.B. No. 5, 149 Ohio Laws, Part I, 621 ("S.B. 5"), legislation passed by the General Assembly that changed the method by which property owners can object to an annexation proceeding. S.B. 5 was the subject of a referendum petition filed with the Secretary of State that was certified by him as containing an insufficient number of valid signatures to permit the matter to be submitted to the electorate for a vote.

{¶ 2} By way of explanation regarding the complexities of this case, litigation arose separately in two different counties, which we have characterized as the referendum proceedings, originating in Franklin County, and the annexation proceedings, originating in Fairfield County.

The Referendum Proceedings

{¶ 3} The facts surrounding this case indicate that on June 12, 2001, the General Assembly passed S.B. 5, which amended R.C. 709.07 to specify an administrative appeal as the exclusive remedy to challenge a board of county commissioners' approval of an annexation petition. Prior to the passage of S.B. 5, R.C. 709.07 had specified injunctive relief as the exclusive remedy to raise such a challenge. The Governor signed S.B. 5 into law on July 27, 2001, and filed it with the Secretary of State the same day, with the expectation that it would become effective 90 days after its filing, pursuant to Section 1c, Article II of the Ohio Constitution.

{¶ 4} In this instance, however, on October 25, 2001, a referendum committee filed a petition to have the legislation submitted to a statewide referendum. A count of the days following the filing with the Secretary of State reveals that October 25, 2001 is the 90th day following filing. In *Heuck v. State ex rel. Mack* (1933), 127 Ohio St. 247, 187 N.E. 869, we held that the 90-day period prescribed in Section 1c, Article II of the Ohio Constitution embraces 90 full days, such that legislation filed with the Secretary of State is subject to a referendum petition at least until midnight of the 90th day. Nonetheless, all parties to this appeal agree that the filing of that referendum petition stayed S.B. 5 from taking effect. Upon receipt of the petition, the Secretary of State separated it into part-petitions and sent the part-petitions to the respective county boards of elections to determine the validity of the signatures and of the circulators' compensation statements. Thereafter, the Franklin, Hancock, Muskingum, Montgomery, and Trumbull County boards of elections rejected a total of 30 individual part-petitions either on the basis of a discrepancy regarding the number of signatures witnessed or because of an incomplete compensation statement. On December 3, 2001, the referendum committee filed a protest with the Franklin County Board of Elections challenging its rejection of the part-petitions. The next day, on December 4, 2001, the Secretary of State notified the referendum committee that the petition contained an insufficient number of valid signatures but that pursuant to Section 1g, Article II of the Ohio Constitution and R.C. 3519.16, additional signatures could be provided within ten days. On December 5 and 6, 2001, the committee also filed other protest actions with the boards of elections in each of the other counties.

{¶ 5} On December 7, 2001, the referendum committee filed a complaint for mandamus in the Franklin County Common Pleas Court to compel the Secretary of State to determine the extent of the petition's insufficiency. The committee also sought an injunction to stay the effect of the Secretary of State's December 4 notification letter. On December 13, 2001, the trial court issued a temporary restraining order that purported to stay the effect of the Secretary of State's

notification, which had invoked the ten-day statutory period afforded by R.C. 3519.16 to submit additional signatures. Subsequently, on February 20, 2002, the court granted permanent relief and ordered the Secretary of State to determine the extent of the petition's insufficiency. Pursuant to that court order, the Secretary of State issued another statutory notification on February 21, 2002, quantifying the insufficiency of signatures on the petitions and stating that additional signatures could be provided within ten days.

{¶ 6} In response, on March 4, 2002, the referendum committee filed additional signatures with the Secretary of State, but on March 27, 2002, the Secretary issued a third and final letter to the committee advising that their petition contained an insufficient number of valid signatures for the referendum to be submitted to the electors of Ohio.

### The Annexation Proceedings

{¶ 7} During the pendency of the referendum proceedings, on March 1, 2002, Robert and Wilma Snider filed a petition with the Fairfield County Board of Commissioners to annex 227.296 acres in Violet Township to the village of Canal Winchester. The Sniders owned 126.726 of those acres, and appellant, Alyce Lucille Thornton, owned the remaining acreage.

{¶ 8} The Fairfield County Board of Commissioners passed a resolution approving the annexation petition on August 20, 2002. Thornton, who opposed the annexation, filed an administrative appeal (the post-S.B. 5 remedy) on September 17, 2002, and also sought an injunction (the pre-S.B. 5 remedy) on October 11, 2002, in the Fairfield County Common Pleas Court, against Ken Salak, clerk of the Village of Canal Winchester; the village of Canal Winchester; the Violet Township Board of Trustees; Robert and Wilma Snider; and Eugene L. Hollins, agent for the annexation petitioners (the "Canal Winchester parties"). The trial court determined, based on the Secretary of State's March 27, 2002 ruling that the referendum petition contained an insufficient number of valid signatures, that the referendum petition had no legal effect, and therefore S.B. 5 became effective 90 days after the Governor filed it in the office of the Secretary of State. The court concluded, therefore, that Thornton's proper cause of action consisted of an administrative appeal to the court; consistent with its holding and in connection with its review, the court found that a preponderance of reliable, probative, and substantial evidence supported the board's resolution in favor of annexation, and it therefore affirmed that resolution and dismissed Thornton's injunction action as moot.

{¶ 9} Thornton appealed that decision to the Fairfield County Court of Appeals, which reversed the judgment of the trial court and held that the effective date of S.B. 5 had been stayed until the Secretary of State certified the referendum petition as invalid on March 27, 2002. The appellate court concluded

that S.B. 5 did not become effective until after the Sniders had filed their petition for annexation and therefore the trial court should have applied the old law, not S.B. 5, and it concluded that the trial court erred in dismissing Thornton's action for an injunction.

{¶ 10} We granted discretionary review of this appeal from the Fairfield County Court of Appeals annexation proceeding to address the issue of the effective date of legislation that was the subject of a referendum petition that contained an insufficient number of valid signatures to be submitted to the electorate for a vote.

{¶ 11} Thornton asserts in our court that the Ohio Constitution provides only two effective dates for legislation enacted by the General Assembly: one, 90 days after the Governor signs the legislation and files it with the Secretary of State or, two, if submitted to the electorate pursuant to a referendum, upon approval by the electorate. Therefore, Thornton asserts that because the Secretary of State determined that the referendum petition contained an insufficient number of valid signatures to submit S.B. 5 to the electorate, the only date it could have become effective was October 26, 2001, which is 90 days after the Governor filed it with the Secretary of State.

{¶ 12} The Canal Winchester parties argue that S.B. 5 became effective when the Secretary of State advised the referendum committee on March 27, 2002, that the petition contained an insufficient number of valid signatures for the referendum to be submitted to the electors for approval or rejection.

{¶ 13} Thus, the central dispute between the parties to this appeal concerns when S.B. 5 became effective: 90 days after the Governor filed it in the office of the Secretary of State, or upon proof that the referendum petition contained an insufficient number of valid signatures to be submitted to the voters at the next election.

{¶ 14} In connection with the issue presented, Section 1c, Article II of the Ohio Constitution provides:

{¶ 15} "No law passed by the general assembly shall go into effect until ninety days after it shall have been filed by the governor in the office of the secretary of state, except as herein provided. When a petition, signed by six per centum of the electors of the state and verified as herein provided, shall have been filed with the secretary of state within ninety days after any law shall have been filed by the governor in the office of the secretary of state, * * * no such law, section or item shall go into effect until and unless approved by a majority of those voting upon the same."

{¶ 16} Further, Section 1g, Article II of the Ohio Constitution provides:

{¶ 17} "The petition and signatures upon such petitions shall be presumed to be in all respects sufficient, unless not later than forty days before the election, it shall be otherwise proved and in such event ten additional days shall be allowed for the filing of additional signatures to such petition."

{¶ 18} Of further relevance is R.C. 3519.15, which provides that the Secretary of State shall separate the part-petitions by county and transmit them to the respective county boards of elections to determine the sufficiency of the signatures. R.C. 3519.16 provides that the Secretary shall then notify the referendum committee of the petition's sufficiency, and, if the petition lacks sufficient signatures, the extent of the insufficiency. If the petition lacks a sufficient number of valid signatures, the committee shall have ten additional days after the Secretary's notification to submit additional signatures. After the county boards of elections review the validity and sufficiency of the supplemental signatures, the Secretary provides final notification to the committee if the petition still lacks a sufficient number of valid signatures.

{¶ 19} Thus, absent a petition for referendum being filed with the Secretary of State, the effective date of new legislation is fixed and certain, because Section 1c, Article II of the Ohio Constitution specifies that it shall go into effect 90 days after it shall have been filed by the Governor in the office of the Secretary of State.

{¶ 20} As a corollary, when the electorate is asked to vote on a referendum on newly enacted legislation, such certainty also exists because, upon the filing of a referendum petition, the effective date of new legislation is stayed pending the outcome of the referendum vote. See Section 1c, Article II, Ohio Constitution. If the referendum vote is successful, the new law never goes into effect, and the old law remains. If the referendum fails, the new law becomes effective. In accord with the notion that certainty must exist with respect to law, and only one law can be in effect at one time on a given subject, we have concluded that when the Secretary of State finally determines that a referendum petition contains an insufficient number of valid signatures for the matter to be submitted to the electorate for approval or rejection, the constitutional stay ends and the new law takes effect at that time.

{¶ 21} Thornton makes a cogent argument that the Ohio Constitution specifies only two dates for legislation to become effective: one, 90 days after the Governor files the legislation with the Secretary of State, or, two, when the electorate approves the legislation following a referendum vote. There are two reasons, however, why this argument is unpersuasive.

{¶ 22} First, it does not contemplate Section 1g, Article II of the Ohio Constitution, which implies another effective date for legislation, i.e., when the presumption in all respects of the sufficiency of the petition and signatures shall be otherwise proved. Although that section of the Ohio Constitution creates a

presumption of sufficiency regarding the referendum petition and the signatures thereon, the plain language of that section also provides that the presumption may be overcome when "it shall be otherwise proved." Hence, the framers of the Constitution recognized that not all referendum petitions would result in the legislation being placed on the ballot for submission to the electorate, but rather, that some would fail upon proof of the petition's insufficiency. Such proof occurred in this case on March 27, 2002, when the Secretary of State finally certified that the petition contained an insufficient number of valid signatures and would therefore not be placed on the ballot. However, Section 1c, Article II of the Ohio Constitution specifically provides that when a referendum petition shall have been filed with the Secretary of State, no such law "shall go into effect until and unless approved by a majority of those voting on the same." Thus, we know that the Ohio Constitution precluded S.B. 5 from becoming effective upon the filing of the referendum petition. Therefore, when the referendum proceedings ended on March 27, 2002, the constitutional postponement of S.B. 5's effective date also ended, because there was nothing to be submitted to the electorate, and, thus, the legislation became effective at that time.

{¶ 23} Second, if taken to its logical conclusion, Thornton's analysis eliminates certainty as to the effective date of legislation and creates confusion with respect to the situation presented by the facts in this case because it forces a litigant to choose between following the old law or the new law, pending the Secretary of State's review of the referendum petition. Here, because of this uncertainty, Thornton filed two causes of action: the first, an injunction, pursuant to the old law, and the second, an administrative appeal, pursuant to the new law. But litigants should not be forced into this Hobson's choice because the framers of the Constitution have contemplated a third date to fill the void presented by cases like this one. Accordingly, we reject these lines of analysis offered by Thornton.

### Conclusion

{¶ 24} The Ohio Constitution contains references to three dates when a law passed by the General Assembly shall go into effect: 90 days after it shall have been filed by the Governor in the office of the Secretary of State, Section 1c, Article II, Ohio Constitution; upon approval by a majority of those voting upon a referendum, Section 1c, Article II, Ohio Constitution; and, as contemplated by Section 1g, Article II, Ohio Constitution and R.C. 3519.16, upon proof that a referendum petition contains an insufficient number of valid signatures to have the matter submitted to the electorate of the state of Ohio.

{¶ 25} Accordingly, we affirm the judgment of the Fairfield County Court of Appeals and remand the matter for further proceedings consistent with this opinion.

Judgment affirmed
and cause remanded.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR and LANZINGER, JJ., concur.

McMONAGLE, J., dissents.

CHRISTINE T. McMONAGLE, J., of the Eighth Appellate District, sitting for RESNICK, J.

---

**McMONAGLE, J., dissenting.**

{¶ 26} Respectfully, I dissent from the decision of the majority, which holds that Am.Sub.S.B. 5, 149 Ohio Laws, Part I, 621 ("S.B. 5") became effective March 27, 2002, when the Secretary of State declared the petitions invalid.

{¶ 27} The majority holds that the words of Section 1g, Article II, Ohio Constitution, and R.C. 3519.16 establish the proposition that a law against which an invalid referendum petition is lodged becomes effective upon the date the Secretary of State declares the petitions invalid. This position is not supported by the words of the Constitution or the statute or any reasonable interpretation of those words. It is a fiction constructed to resolve what the majority believes to be an uncertainty in the law. I would hold that this uncertainty, if in need of resolution at all, is best resolved by the legislature or constitutional amendment; however, its resolution by the majority has no roots in the language of the Constitution.

{¶ 28} The majority states that there are three provisions in the Ohio Constitution that establish the date upon which a law passed by the General Assembly shall go into effect:[1]

{¶ 29} 1. Section 1c, Article II. This section provides that a law is effective 90 days after the law shall have been filed by the Governor in the office of the Secretary of State.

{¶ 30} 2. Section 1c, Article II. This section provides that a law, in the case of referendum, is effective upon approval by a majority of the electorate at the next succeeding regular or general election.

{¶ 31} 3. Section 1g, Article II and R.C. 3519.16. Section 1g, Article II provides that a referendum petition "shall be presumed to be in all respects sufficient, unless not less than forty days before the election, it shall be otherwise proved." R.C. 3519.16 provides the method of protest against findings of validity

---

1. The majority does not mention a fourth provision, Section 1d, Article II, Ohio Constitution, which provides that tax levies, appropriations for current expenses, and emergency laws necessary for the immediate preservation of the public peace, health, or safety shall go into immediate effect and that such laws are not subject to referendum.

or invalidity of a referendum petition by a board of elections. It also provides that the Secretary of State record and announce the decision concerning the validity of the petitions.

{¶ 32} The majority argues that Section 1g, Article II, read in concert with R.C. 3519.16, creates a third (or fourth, see fn. 1) potentially effective date for a law passed by the legislature where a referendum petition is ultimately ruled invalid. I nowhere see either in the words themselves, or in their implications, the establishment of an effective date "upon proof that a referendum petition contains an insufficient number of signatures," as urged by the majority. I read the language in Section 1g, Article II that a referendum petition is presumed sufficient "unless * * * otherwise proved" to mean exactly what it says, i.e., if there is no protest to the petition, or if the protest is overruled, the issue will be submitted to the voters upon the ballot. R.C. 3519.22, which states that "[n]o measure submitted to the electors and receiving an affirmative majority of the votes cast on the measure shall be held ineffective or void on account of the insufficiency of the petitions by which such submission was procured," supports this interpretation of Section 1g, Article II.

{¶ 33} The majority contends that without implying this third (or fourth) effective date, there will be great uncertainty in the law, and suggests that no one will know what law applies during the period of time the petitions are being scrutinized. To ameliorate this uncertainty, it urges an effective date which corresponds with the date the Secretary of State announces that the petitions are invalid and states that no more extensions to conform the petitions are permitted.

{¶ 34} This holding of the majority gives power to an invalid petition; a wholly invalid petition would modify the effective date of legislation simply by being presented for validation. I think the better reasoning is that an invalid petition is a nullity and cannot and should not affect anything.

{¶ 35} While the majority's intent to eliminate a potential uncertainty in the law is laudatory and perhaps even desirable, I cannot find the foundation for this in the words of the Constitution.

{¶ 36} In sum, I would reverse the judgment and remand the cause, holding that an invalid referendum petition is a nullity, and that the effective date of legislation, if it is a law subject to the possibility of referendum, is 90 days after the Governor files it with the Secretary of State, or, if a law not subject to referendum, then immediately upon its passage, as specifically provided in the Ohio Constitution.

Law Offices of Donald J. McTigue, Donald J. McTigue, Robert A. Beattey Jr., and Mark A. McGinnis, for appellant.

Thompson Hine, L.L.P., O. Judson Scheaf III, Scott A. Campbell, and Michele L. Noble; and Wiles, Boyle, Burkholder & Bringardner Co., L.P.A., and Michael L. Close, for appellees Ken Salak, Eugene L. Hollins, village of Canal Winchester, Robert J. Snider, and Wilma J. Snider.

Moots, Carter & Hogan, L.P.A., and Wanda L. Carter, for appellee Violet Township Board of Trustees.

