THE STATE EX REL. OHIO GENERAL ASSEMBLY
ET AL. *v.* BRUNNER, SECY. OF STATE.

[Cite as *State ex rel. Ohio Gen. Assembly v. Brunner,*
115 Ohio St.3d 103, 2007-Ohio-4460.]

(No. 2007–0209—Submitted August 13, 2007—Decided August 31, 2007.)

**Per Curiam.**

I

{¶ 1} In the present action, respondent, Secretary of State Jennifer Brunner, asks us to reconsider or clarify our opinion or stay our order in *State ex rel. Ohio Gen. Assembly v. Brunner,* 114 Ohio St.3d 386, 2007-Ohio-3780, 872 N.E.2d 912 (*"Brunner"*). She specifically asks us "to answer a critical question: do Ohio's citizens still have the right of referendum regarding Am.Sub.S.B. No. 117, or did the time for referendum expire while this case was being litigated?"

{¶ 2} For the following reasons, we hold that, despite our statements to the contrary in *Brunner,* Am.Sub.S.B. No. 117 became law on August 1, 2007. Therefore, pursuant to Section 1c, Article II of the Ohio Constitution, the electors of this state have 90 days from August 1, 2007, to pursue a referendum.

II

{¶ 3} A brief restatement of the operative facts is necessary to frame this decision. On August 1, 2007, we announced the opinion in *Brunner,* which focused on the validity of Am.Sub.S.B. No. 117. The 126th General Assembly passed Am.Sub.S.B. No. 117 in December 2006, shortly before it adjourned sine die on December 26, 2006. *Brunner,* 114 Ohio St.3d 386, 2007-Ohio-3780, 872 N.E.2d 912, at ¶ 4–5. The General Assembly presented the bill to Governor Bob Taft on December 27, 2006. Id. at ¶ 6. Governor Taft chose to neither veto nor approve the bill, and instead filed it in the office of then Secretary of State Kenneth Blackwell on Taft's last business day in office, January 5, 2007.

{¶ 4} Governor Ted Strickland and Secretary Brunner officially replaced Governor Taft and Secretary Blackwell on January 8, 2007. Id. at ¶ 10. On that day, Governor Strickland asked Secretary Brunner to "return" Am.Sub.S.B. No.

117 to him for further review, as he believed the ten-day presentment period set forth in Section 16, Article II of the Ohio Constitution had not yet expired. Id. Secretary Brunner complied, and Governor Strickland vetoed the bill on January 8, 2007. Id.

{¶ 5} Approximately three and one-half weeks later, the Ohio General Assembly, Ohio Senate President Bill Harris, and Ohio House of Representatives Speaker Jon Husted requested a writ of mandamus to compel Secretary Brunner to ignore the veto and proceed as if Am.Sub.S.B. No. 117 had become law on January 5, 2007. Id. at ¶ 12.

{¶ 6} We determined that Governor Strickland's veto of Am.Sub.S.B. No. 117 was ineffective, as it fell outside the permissible time limit for vetoes provided in Section 16, Article II of the Ohio Constitution. Id. at ¶ 50. Accordingly, we granted a writ of mandamus compelling Secretary Brunner "to treat Am.Sub.S.B. No. 117 as a validly enacted law and to fulfill all of [her] statutory duties concerning that law." Id. at ¶ 51.

{¶ 7} Importantly, we also noted that "[t]he parties did not request a stay of the effective date of the law to allow for circulation of referendum petitions, and we express no opinion on whether a stay may be permissible. Accordingly, Section 1c, Article II of the Ohio Constitution provides for the effective date of Am.Sub.S.B. No. 117." Id. at ¶ 52. Thus, we deemed the law to be effective 90 days after it was originally filed in the secretary of state's office by Governor Bob Taft, i.e., April 5, 2007.

## III

{¶ 8} The constitutional right of citizens to referendum is of paramount importance. "The legislative power of the state shall be vested in a General Assembly consisting of a senate and house of representatives *but the people reserve to themselves the power to propose to the General Assembly laws and amendments to the constitution, and to adopt or reject the same at the polls on a referendum vote as hereinafter provided.*" (Emphasis added.) Section 1, Article II, Ohio Constitution. As the United States Supreme Court has observed, "The referendum * * * is a means for direct political participation, allowing the people the final decision, amounting to a veto power, over enactments of representative bodies. The practice is designed to 'give citizens a voice on questions of public policy.'" *Eastlake v. Forest City Ents., Inc.* (1976), 426 U.S. 668, 673, 96 S.Ct. 2358, 49 L.Ed.2d 132, quoting *James v. Valtierra* (1971), 402 U.S. 137, 141, 91 S.Ct. 1331, 28 L.Ed.2d 678.

{¶ 9} This reserved power of referendum applies to every law passed in this state and provides an important check on actions taken by the government. See *State ex rel. Ohio AFL–CIO v. Voinovich* (1994), 69 Ohio St.3d 225, 234, 631

N.E.2d 582. Laws generally do not take effect until 90 days have passed from the date they are filed by the governor with the secretary of state, to allow for a possible referendum. Section 1c, Article II, Ohio Constitution. If no referendum petition is filed in this 90-day period, the law becomes effective immediately; if a referendum petition is filed, the law becomes effective when a majority of electors approve it or it is determined that the referendum petition lacks a sufficient number of valid signatures. See *Thornton v. Salak,* 112 Ohio St.3d 254, 2006-Ohio-6407, 858 N.E.2d 1187, syllabus. Thus, the 90-day period is a critical time to initiate the process of giving citizens their voice on a question of public policy.

{¶ 10} *Brunner* was a unique case, both factually and legally. Governor Taft's filing of Am.Sub.S.B. No. 117 in Secretary of State Blackwell's office would normally start the time for referendum. However, his successor, Governor Strickland, purported to undo this action by requesting that the bill be returned, and subsequently vetoing it. When we invalidated Governor Strickland's action, we proceeded as if the bill had never been vetoed and, pursuant to Section 1c, Article II, made the law effective 90 days from the day Governor Taft filed it in the secretary of state's office. *Brunner,* 114 Ohio St.3d 386, 2007-Ohio-3780, 872 N.E.2d 912, at ¶ 52. Secretary Brunner did not request that we stay that action.

{¶ 11} However, this result is problematic under the Constitution, given the unique facts of this case. While courts are to "strictly construe applicable requirements for initiative and referendum," including the time within which a referendum petition must be filed,[1] the backdating of Am.Sub.S.B. No. 117 cannot change the fact that the law was a nullity from the date of the veto, January 8, 2007, until the date of our decision, August 1, 2007. A citizen opposed to Am.Sub.S.B. No. 117 could not know whether the law was valid or invalid. The conduct of one governor made the law valid, then the conduct of a successor governor made the law invalid. Never in Ohio's history has that circumstance been created.

{¶ 12} It could be reasonably argued that following Governor Strickland's veto, there was no law to challenge and thus no need to pursue referendum. Objectors had reason to act only after we announced our opinion; by then, it was too late to begin a successful referendum-petition effort.

{¶ 13} Amici Ohio Alliance for Civil Justice et al. urge us to uphold the effective date established in *Brunner.* They argue that because neither Secretary Brunner nor the numerous amici in the case requested that we stay the date on which Am.Sub.S.B. No. 117 became law, there is nothing for us to reconsider

---

1. *State ex rel. McCord v. Delaware Cty. Bd. of Elections,* 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 38; see, also, *Dubyak v. Kovach* (1955), 164 Ohio St. 247, 250, 58 O.O. 1, 129 N.E.2d 809.

here. They further suggest that such a stay would disrupt the ordinary lawmaking process even further, potentially delaying the effective date of Am.Sub.S.B. No. 117 until after the November 2008 election, and that referendum time limits should be strictly construed.

{¶ 14} While we are cognizant of these concerns and sought to definitively resolve this matter in *Brunner*, we cannot simply brush aside the powers specifically reserved by the citizens of this state in the Constitution, regardless of whether these concerns were raised in the initial suit by the named parties. The simple fact remains that in this case, citizens were not put on notice that Am.Sub.S.B. No. 117 was a valid law subject to referendum until August 1, 2007. In pursuing the proper resolution of the constitutional issue before us, we unintentionally deprived the citizens of the right to referendum that they would have enjoyed were it not for the unavoidable delays associated with judicial review. This result is unacceptable.

{¶ 15} In view of the unique circumstances of this case, in which the actions of two governors and two secretaries of state were diametrically opposed, the only satisfactory solution is to move the beginning of the 90-day referendum period to the date of the decision in *Brunner*. Given Secretary Brunner's timely motion for reconsideration or stay, a significant amount of the 90-day referendum period remains. Interested citizens now have ample opportunity to circulate petitions and seek a vote on the validity of the law in accordance with Section 1c, Article II of the Ohio Constitution. While this result is an unusual one, it is necessary to safeguard the rights reserved to the citizens of this state under the Ohio Constitution.

## IV

{¶ 16} For the foregoing reasons, we hereby amend our decision in *Brunner* to move the date on which Am.Sub.S.B. No. 117 became a law to August 1, 2007. The citizens of this state have 90 days from that date to file a referendum petition against it pursuant to Section 1c, Article II of the Ohio Constitution.

So ordered.

MOYER, C.J., LUNDBERG STRATTON and O'CONNOR, JJ., concur.

LANZINGER, J., concurs in judgment only.

PFEIFER, J., concurs in part and dissents in part.

O'DONNELL and CUPP, JJ., dissent.

_____

**LANZINGER, J., concurring in judgment only.**

{¶ 17} Although I dissented from the original majority opinion in *State ex rel. Ohio Gen. Assembly v. Brunner*, 114 Ohio St.3d 386, 2007-Ohio-3780, 872 N.E.2d 912, I nonetheless now agree that the right to referendum must be respected and therefore concur in judgment only.

---

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 18} The majority's decision today is not an amendment or clarification of its August 1, 2007 decision; the majority has completely changed the holding on an issue settled in the first opinion. Today's opinion should properly be called a reconsideration, and the holding in the earlier majority opinion should be considered invalid. There is no reason that the 90–day time period for exercising the right of referendum should start to run from the date of that abrogated holding. Today is the day that Ohioans have learned that they may assert their right to referendum as to Am.Sub.S.B. No. 117. On August 1, they were told they could not. The 90-day clock should start running now.

{¶ 19} The majority today recognizes the importance of the constitutional right to referendum. Unfortunately, in this case, it finds that the referendum right is only two-thirds as important as usual. The majority has given Ohioans 60 days to accomplish what the Ohio Constitution gives them 90 days to accomplish. Beyond the allure of constitutional consistency, starting the referendum clock running today would present no practical difference as far as the eventual placement of Am.Sub.S.B. No. 117 on the ballot for approval or rejection by the electors of this state. Since Section 1c, Article II of the Ohio Constitution requires 60 days to pass from the filing of a referendum petition until the matter can be placed on the ballot, whether the referendum period began on August 1 or today, any successful petition would not result in Am.Sub.S.B. No. 117 being placed on the ballot for approval or rejection until November 2008. Thus, the only practical effect of starting the referendum period on August 1 is to make it much harder to meet the arduous requirements of a successful referendum petition: signatures of six percent of the electors of the state, which must include at least three percent of the electors from at least half of Ohio's 88 counties. Section 1g, Article II, of the Ohio Constitution. If, as the majority writes, the right of referendum is "of paramount importance," this court ought not to shortchange Ohioans in their opportunity to assert that right.

{¶ 20} Accordingly, I concur in the majority's decision today to grant a stay as to the effective date of Am.Sub.S.B. No. 117, but I dissent from the part of the decision setting August 1, rather than today, as the date from which the referendum period will run. I continue to vigorously dissent from the balance of

*State ex rel. Ohio Gen. Assembly v. Brunner,* 114 Ohio St.3d 386, 2007-Ohio-3780, 872 N.E.2d 912.

---

**O'DONNELL, J., dissenting.**

{¶ 21} While I concur with the views expressed in Justice Cupp's dissenting opinion, I write separately to emphasize that, in my view, the majority opinion is advisory in nature and grants relief in derogation of the Ohio Constitution.

{¶ 22} The pleading before us, styled as a "Motion for Reconsideration or Stay," filed by the secretary of state, seeks a "clarification" on whether she should accept or reject a petition for referendum in connection with Am.Sub.S.B. No. 117. The secretary relates that her office has received a letter from certain groups participating in this case as amici that states that they are "seriously considering initiating a referendum campaign." The secretary does not allege, however, that any petitions for referendum have been filed in her office concerning Am.Sub.S.B. No. 117. As there is no actual referendum petition before her, any decision rendered by this court with respect to the possibility of such a filing is wholly advisory.

{¶ 23} As this court stated in *Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 14, 51 O.O.2d 35, 257 N.E.2d 371, "it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect." We further stated that it is the "settled judicial responsibility for courts to refrain from giving opinions on abstract propositions and to avoid the imposition by judgment of premature declarations or advice upon potential controversies." Id. In short, "we will not indulge in advisory opinions." *State ex rel. White v. Kilbane Koch,* 96 Ohio St.3d 395, 2002-Ohio-4848, 775 N.E.2d 508, ¶ 18.

{¶ 24} Accordingly, I do not believe that the court should consider the issue before us, and I would dismiss the motion filed by the secretary of state.

{¶ 25} More significantly, the relief granted by the majority contravenes Section 1c, Article II of the Ohio Constitution, which sets forth only one process for delaying the effective date of the legislation filed by the governor with the secretary of state. As we held in *Thornton v. Salak,* 112 Ohio St.3d 254, 2006-Ohio-6407, 858 N.E.2d 1187, ¶ 19–20, "absent a petition for referendum being filed with the Secretary of State, the effective date of the new legislation is fixed and certain, because Section 1c, Article II of the Ohio Constitution specifies that it shall go into effect 90 days after it shall have been filed by the Governor in the office of the Secretary of State."

{¶ 26} "As a corollary, when the electorate is asked to vote on a referendum on newly enacted legislation, such certainty also exists because, upon the filing of a referendum petition, the effective date of new legislation is stayed pending the outcome of the referendum vote. See Section 1c, Article II, Ohio Constitution. If the referendum vote is successful, the new law never goes into effect, and the old law remains. If the referendum fails, the new law becomes effective."

{¶ 27} A majority of this court held that Governor Taft filed Am.Sub.S.B. No. 117 with the secretary of state on January 5, 2007, and that the subsequent actions of Governor Strickland and Secretary of State Brunner did not nullify that filing date. The secretary of state did not accept any referendum petitions within 90 days of January 5, 2007, and the Ohio Constitution sets forth no other means by which to stay the effective date of that legislation. Therefore, in conformity with Section 1c, Article II of the Ohio Constitution, it is my view that Am.Sub.S.B. No. 117 is now effective law.

{¶ 28} The majority, however, has stayed the effective date of that legislation, stating that it was "a nullity" until our decision on August 1, 2007. This result has no basis in the Ohio Constitution or in our precedent, and the fact that this case is unique does not justify granting such extraconstitutional relief. The Supreme Court of Ohio does not have the authority to amend the Ohio Constitution by a judicial decision.

{¶ 29} Based on the foregoing, I would dismiss the motion for reconsideration filed by the secretary of state.

---

CUPP, J., dissenting.

{¶ 30} I dissent from the majority's decision to "move the date on which Am.Sub.S.B. No. 117 became a law to August 1, 2007," the date of this court's decision in *State ex rel. Ohio Gen. Assembly v. Brunner*, 114 Ohio St.3d 386, 2007-Ohio-3780, 872 N.E.2d 912.

{¶ 31} A majority of this court, in pursuit of the laudable goal of preserving a clear referendum opportunity unobscured by the cloud of litigation, creates a mechanism for delaying the constitutionally established effective date of a law in this "unique case." To accomplish this result, the majority inserts into the Ohio Constitution what is, in effect, a retroactive stay: a remedy that is previously unknown to the law. However desirable an extension of time for a referendum in this case may be, it has no authorization in the text of the Constitution, and, in fact, contradicts it. I am compelled, therefore, to respectfully dissent.

{¶ 32} The majority's concern, that the citizens of the state will be unable to challenge the merits of the public policy contained within this law [2] without an extended referendum period, is misplaced. The Constitution wisely provides not just one, but several, mechanisms to challenge or change existing law. These include both direct contact to sway members of the General Assembly to revise or repeal the now-existing law and the right of initiative. Notably, Am.Sub.S.B. No. 117 was enacted in the previous, 126th General Assembly; a new General Assembly is now in session and is engaged in the lawmaking process. Opponents of Am.Sub.S.B. No. 117 have the opportunity to press their case that the law should be altered or repealed. Additionally, the Ohio Constitution provides for the right of citizens to initiate a new law, which may include the revision or repeal of an existing law, by citizen petition to the General Assembly, and to force a statewide vote if the General Assembly fails to satisfactorily respond. See Section 1b, Article II, Ohio Constitution. Thus, declining to extend the referendum process in this case would not deprive the citizens of this state of their constitutional right to ultimately revise or repeal state laws.

I

{¶ 33} To begin, the relief the secretary of state seeks in her current motion is not properly a matter of "reconsideration" but instead is a request for new relief. The secretary did not request this relief while this case was pending on the merits. Indeed, the secretary went so far as to say in her original merit brief that "[m]ore than ninety days have passed [from January 5, 2007, the date the governor originally filed Am.Sub.S.B. No. 117] as of the date of the filing of [the secretary's merit] brief, and *no referendum petitions have been filed with the Secretary; consequently, any referendum issues are moot.*" (Emphasis added.) The secretary's change of course after the court's decision in this case provides no basis for granting the new relief she requests.

{¶ 34} Additionally, the secretary's standing to request such relief is questionable at best. According to her motion, her request for a stay to allow a 90–day referendum period for Am.Sub.S.B. No. 117 is made at the behest of some of the amici curiae who supported her in this litigation. She does not contend that in her capacity as secretary of state she has a "personal stake" in the request for a stay. See, generally, *State ex rel. Leslie v. Ohio Hous. Fin. Agency,* 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 47; *Ohio Contrs. Assn. v. Bicking* (1994), 71 Ohio St.3d 318, 320, 643 N.E.2d 1088. Indeed, she stated in her brief on the merits in this case that as secretary of state, she had no general legal duty

---

2. On August 1, the court held that Am.Sub.S.B. No. 117 is a law, as the governor's purported January 8 veto of it was ineffective. On August 31, the court has retroactively and without known precedent effectively reduced the law to a bill again.

to calculate and publish the date by which referendum petitions must be filed with her office, because the Ohio Constitution determined that date ("The Secretary of State has no constitutional duty to assign [the] date [by which referendum petitions must be submitted for challenging laws]—a date established by the Ohio Constitution itself"; "The Ohio Constitution does *not*, however, require the Secretary to advise Ohio citizens of the date by which referendum petitions must be filed"). (Emphasis sic.)

{¶ 35} Further, the secretary's request for "clarification" of her duties with regard to any referendum petitions that might be filed is akin to a request for an advisory opinion. She does not state that she has received any such petitions. Indeed, her earlier merit brief in the case acknowledged that she had not received any petitions as of that time. The secretary instead seeks direction from the court on what she ought to do in the event any such petitions may be filed with her office. But this court does not issue advisory opinions. See, e.g., *State ex rel. White v. Kilbane Koch*, 96 Ohio St.3d 395, 2002-Ohio-4848, 775 N.E.2d 508, ¶ 18.

## II

{¶ 36} In addition to the procedural problems with the secretary's request, the relief sought is not warranted on the merits. We have held that "absent a petition for referendum being filed with the Secretary of State, the effective date of new legislation is fixed and certain, because Section 1c, Article II of the Ohio Constitution specifies that it shall go into effect 90 days after it shall have been filed by the Governor in the office of the Secretary of State." *Thornton v. Salak*, 112 Ohio St.3d 254, 2006-Ohio-6407, 858 N.E.2d 1187, ¶ 19. Section 1c, Article II provides that "[n]o law passed by the general assembly shall go into effect until ninety days after it shall have been filed by the governor in the office of the secretary of state." Courts are to "strictly construe applicable requirements for initiative and referendum," including the time limits for filing petitions. *State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 38; see, generally, *Dubyak v. Kovach* (1955), 164 Ohio St. 247, 250, 58 O.O. 1, 129 N.E.2d 809. The majority does not disagree with these general principles.

{¶ 37} While I wholeheartedly agree that the constitutional referendum process is of crucial importance in allowing the citizens to exercise their reserved power to "adopt or reject any law" passed by the General Assembly, see Section 1, Article II, Ohio Constitution, I do not believe that we can judicially revise the process that the people of the state expressly adopted in Section 1c, Article II.

{¶ 38} Accordingly, I part company from the majority's determination, without citation to authority, that Am.Sub.S.B. No. 117 "was a nullity from the date of the veto, January 8, 2007, until the date of our decision, August 1, 2007." The

majority does not explain how the governor's purported veto on January 8, which we held in *Brunner* was ineffective, could somehow "ma[k]e the law invalid." The language of Section 1c, Article II of the Ohio Constitution does not provide for this result. We have never held that possible confusion over the effectiveness of a governor's veto automatically suspends the 90–day referendum period provided in Section 1c, Article II. Because Section 1c provides the answer to the question of the statute's effective date, it cannot fairly be said that those who objected to the law "had reason to act only after we announced our opinion." [3]

{¶ 39} The relief granted today also conflicts with the familiar principle that unless enjoined or stayed before it goes into effect, a statute's effective date is the one provided by the Constitution (here, Section 1c, Article II), or another date expressly provided in the legislation. Cf. Section 1d, Article II (laws designated as emergency legislation go into immediate effect). Neither the governor's purported veto nor the commencement of this case challenging it, without more, prevented the law from going into effect in accordance with Section 1c, Article II.

{¶ 40} Although not discussed by the majority, *State ex rel. Ohio AFL–CIO v. Voinovich* (1994), 69 Ohio St.3d 225, 631 N.E.2d 582, also does not warrant a departure from the plain language of Section 1c, Article II in this case. In *Voinovich*, the court stayed "the nonappropriation provisions of Am.Sub.H.B. No. 107 for a period of ninety days from the date of [the] decision," id. at 236, 631 N.E.2d 582, because an earlier decision of the court appeared to have disallowed a 90-day referendum period for the category of legislation in question. *Voinovich* overruled that earlier decision, *State ex rel. Riffe v. Brown* (1977), 51 Ohio St.2d 149, 5 O.O.3d 125, 365 N.E.2d 876, and held, contrary to *Riffe*, that the nonappropriation parts of appropriation bills are subject to the referendum. 69 Ohio St.3d at 236, 631 N.E.2d 582. Thus, the court in *Voinovich* attempted to remedy the court's own perceived foreclosure of the referendum process for that category of legislation.

{¶ 41} The situation in *Voinovich* differs from the essentially retroactive stay granted in this case. There has never been a dispute about whether the category of legislation contained in Am.Sub.S.B. No. 117, i.e., nonappropriation matters, is governed by the plain language of Section 1c, Article II of the Ohio Constitution and its 90-day effective date.

---

3. Even if one assumed that persons who objected to the law and would otherwise have pursued the referendum process were confused by the conflicting actions of Ohio's governors on January 5 and January 8, 2007, the parties, or an intervenor, could have asked the court for a stay or injunction of the presumptive effective date of the law (i.e., April 5) before that date passed. Or at a minimum, either of the parties could have requested expedited briefing and consideration of the matter. By raising the possibility of an earlier-requested stay, I do not mean to imply that a stay or injunction would have been proper. But because no one raised this issue in this court while the case was pending, I do not think that the court has occasion now to take up the question.

{¶ 42} I agree with the majority that this case presents a situation that is probably unique. That is all the more reason that the fundamental rules embodied in our state's Constitution should not so easily be revised to accommodate a transitory constitutional complexity.

{¶ 43} Accordingly, I would deny the secretary's motion for reconsideration or stay.

O'DONNELL, J., concurs in the foregoing opinion.

———————

Marc Dann, Attorney General, and Brian J. Laliberte, Michael W. Deemer, Frank M. Strigari, and Pearl M. Chin, Assistant Attorneys General, for respondent.

Bricker & Eckler, L.L.P., Kurtis A. Tunnell, and Anne Marie Sferra, urging denial of the motion for amici curiae, Ohio Alliance for Civil Justice, Ohio Manufacturers' Association, Ohio Chamber of Commerce, National Federation of Independent Business/Ohio, Ohio Council of Retail Merchants, Ohio Business Roundtable, Ohio Chemistry Technology Council, and Ohio Automobile Dealers' Association.