RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0132p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

BENTON BENALCAZAR; KATHERINE BENALCAZAR,
          *Plaintiffs-Appellees/Cross-Appellants*,

          *v.*

GENOA TOWNSHIP, OHIO,
          *Defendant-Appellee* (No. 20-3995),

GTRRD, INC.; LUKE SCHROEDER; JANINE SCHROEDER,
          *Intervenors-Appellants/Cross-Appellees*.

⎫
⎪
⎪
⎪
⎬   Nos. 20-3995/4044
⎪
⎪
⎪
⎭

───────────────

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:18-cv-01805—Algenon L. Marbley, District Judge.

Argued:  June 2, 2021

Decided and Filed:  June 10, 2021

Before:  SUTTON, Chief Judge; DAUGHTREY and GRIFFIN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Peggy S. Guzzo, GUZZO LAW OFFICE, Dublin, Ohio, for GTRRD, Inc., and Luke and Janine Schroeder.  Joseph R. Miller, VORYS, SATER, SEYMOUR AND PEASE LLP, Columbus, Ohio, for Benton and Katherine Benalcazar.  David A. Riepenhoff, FISHEL DOWNEY ALBRECHT & RIEPENHOFF LLP, New Albany, Ohio, for Genoa Township, Ohio. **ON BRIEF:**  Peggy S. Guzzo, GUZZO LAW OFFICE, Dublin, Ohio, for GTRRD, Inc., and Luke and Janine Schroeder.  Joseph R. Miller, Christopher L. Ingram, Elizabeth S. Alexander, VORYS, SATER, SEYMOUR AND PEASE LLP, Columbus, Ohio, for Benton and Katherine Benalcazar.  David A. Riepenhoff, Stephanie L. Schoolcraft, FISHEL DOWNEY ALBRECHT & RIEPENHOFF LLP, New Albany, Ohio, for Genoa Township, Ohio.

—————————

**OPINION**

—————————

SUTTON, Chief Judge.   Nestled next to the Hoover Reservoir in central Ohio, Genoa Township boasts scenic views just a short drive north of Columbus.  Like many communities, the Township has struggled to balance demands for growth against preferences for more greenspace.   Two decades ago, Benton and Katherine Benalcazar bought 43 acres in the Township, which was zoned mainly for rural use and which indeed had many rural qualities—plenty of trees, few houses, plenty of undeveloped land.  A few years ago, they had a change of heart, preferring to use the property for a development rather than to preserve its bucolic nature.  The Benalcazars applied to rezone their property to enable the development of a housing complex not far from the west side of the reservoir, and the Township's board of trustees approved the request.

The approval upset several Township residents.  As permitted by state law, they passed a referendum that prevented the rezoning.

The Benalcazars sued, claiming the Township violated their rights under the Due Process and Equal Protection Clauses of the U.S. Constitution.  The Township settled the matter, signing a consent decree that permitted the Benalcazars to develop their property, though with fewer houses than they had first proposed.  Frustrated by this perceived end run around the referendum process, a group of residents intervened and moved to dismiss the Benalcazars' lawsuit and scuttle the settlement.  The district court approved the consent decree, and so do we.

I.

The Benalcazars purchased property in the Township in 2001.  Their 43-acre plot sits at the northern end of the Township's more developed areas and abuts the Hoover Reservoir, located just east of their property.  At the time the Benalcazars purchased their land, the Township zoned the parcel as Rural Residential.  That zoning designation created several impediments to a housing development.  The Benalcazars would have to build separate septic systems, clear-cut the area, and install multiple driveways along a main road to develop the land

as zoned. To avoid those hurdles, the Benalcazars applied in 2017 to rezone the property to a different state law status, called a Planned Residential District, which permits higher density development. The Township's trustees met in April 2018, and approved the Benalcazars' rezoning application by a 2-1 vote.

A week after the vote, the dissenter, Frank Dantonio, emailed members of the community about the development plan. He explained why he opposed the proposal and told them how to override the decision. Ohio law permits residents to pass a referendum that prevents a zoning amendment from taking effect, *see* O.R.C. § 519.12(H), and Dantonio urged residents to invoke this tool of direct democracy.

Genoa Township residents approved the referendum and reversed the zoning decision. Over 75% of voters supported the referendum and opposed the development.

The Benalcazars were not pleased. Invoking the Due Process and Equal Protection Clauses of the U.S. Constitution, they sued the Township, claiming it deprived them of their property rights and unfairly singled them out for differential treatment. They claimed that the Township has "approved nearly one hundred rezonings from Rural Residential to Planned Residential District," including ones with higher net densities than their proposed development. R.1 at 5. They also alleged that the referendum's supporters resorted to unsavory tactics, calling the Benalcazars outsiders even though the family had "lived on the Property for seventeen years" and questioning "where they are from, and whether they are trustworthy." *Id.* at 2, 14. The Benalcazars sought declaratory relief, a permanent injunction, and damages.

The Township and the Benalcazars worked out a compromise. On one side of the bargain, the Township agreed to change the zoning designation for the Benalcazars' 43-acre plot from Rural Residential to Planned Residential District. On the other side, the Benalcazars agreed to reduce the proposed development from 64 homes to 56 homes, to provide for more open space, to increase the width of half of the lots, and to drop their lawsuit. After a public hearing in which the trustees considered the settlement, the Township and the Benalcazars filed a joint motion for approval of the agreement with the court. In doing so, they pointed to an Ohio law that allows such consent decrees. "Notwithstanding . . . any vote of the electors on a petition for

zoning referendum," it says, "a township may settle any court action by a consent decree or court-approved settlement agreement which may include an agreement to rezone any property involved in the action." O.R.C. § 505.07.

Several of the Township's residents remained unhappy with the development plan, even as modified. They formed an "association of neighboring Genoa Township residents," which sought to intervene in the lawsuit to oppose the consent decree. R.22 at 1. Luke and Janine Schroeder, individual members of the association, sought to intervene too, alleging that the Benalcazars' "development would have a negative impact on the enjoyment of," and would "devalue" their property. R.24-3 at 2; R.24-4 at 2. The district court permitted them to intervene under Civil Rule 24(a).

The intervenors moved to dismiss the complaint under Civil Rule 12(b)(6). Because "all property owners seeking zoning amendments face the possibility of a referendum vote," they claimed, the Benalcazars did not suffer any unfair or unequal treatment. R.52 at 3. The district court dismissed the due process and declaratory judgment claims. But it ruled that the Benalcazars stated a plausible equal protection claim under Civil Rule 12(b)(6). It then approved the consent decree.

## II.

### A.

The key question on appeal, as framed by the parties, is whether the predicate for this consent decree—a valid federal court dispute—exists. As the parties have litigated this case, they have assumed that a court may not oversee a settlement unless it first establishes that the underlying complaint survives a motion to dismiss under Civil Rule 12(b)(6).

But that is not true. Subject-matter jurisdiction over a dispute is one thing; the merits of the underlying dispute are another. Rarely do the twain meet. What matters here is a threshold question, one distinct from the plausibility inquiry of Civil Rule 12(b)(6): Namely, do the federal questions raised by this complaint legitimately create federal court jurisdiction because they are not so frivolous as to be a contrived effort to create such jurisdiction? *See Steel Co. v.*

*Citizens for a Better Env't*, 523 U.S. 83, 89 (1998).  As the Court put the point in *Steel Co.*, case law "firmly establishe[s] . . . that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case."  *Id.*  As the Court put the point decades earlier in *Bell v. Hood*, "[j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover"; only where the "claim is wholly insubstantial and frivolous" is jurisdiction lacking.  327 U.S. 678, 682–83, 685 (1946).

None of this changes in the context of a consent decree.  The law requires only that the "consent decree must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction.  Furthermore, consistent with this requirement, the consent decree must 'com[e] within the general scope of the case made by the pleadings,' and must further the objectives of the law upon which the complaint was based." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986) (quoting *Pacific R. Co. v. Ketchum*, 101 U.S. 289, 297 (1880)).

So long as the Benalcazars' due process and equal protection claims are not "frivolous" but "arguable," the district court had subject-matter jurisdiction over them.  With that jurisdiction, the district court had authority to approve a settlement.  No other merits inquiry was required.  Parties do not have to litigate the merits of a case, whether under Civil Rule 12(b)(6) or Civil Rule 56, to settle it.

How strange if that were not the rule—if a district court could never settle a dispute until after resolving a motion to dismiss or for that matter a motion for summary judgment or, as here, an appealed motion to dismiss.  Parties settle disputes for a variety of reasons, sometimes to save money, sometimes to resolve the disagreement more quickly, sometimes to remove doubt about the validity of conduct, always to allow the affected individuals to move on.  All of these explanations for settlement would be undermined if we imposed a Civil Rule 12(b)(6), or for that matter a Civil Rule 56, hurdle to approving settlements.

To be fair to the parties, they may have perceived resolution of the motion to dismiss as a useful predicate for establishing that the court should, or should not, approve the settlement. That is a fair point, if not an indispensable one.

Measured by this modest test—that the Benalcazars raise sufficiently "arguable" and not "frivolous" claims to create federal court jurisdiction—this complaint passes. Whether it is the equal protection challenge to the Township's zoning decision or the due process challenge to its limitation on their property rights, we cannot say that the legal theory of the case was beyond the pale under the allegations raised in the complaint. In support of both claims, the complaint alleges that the Township has approved "nearly one hundred rezonings from Rural Residential to Planned Residential District." R.1 at 5. It includes a map showing that a sizeable chunk of Genoa Township counts as a Planned Residential District. It identifies three allegedly similar properties that the Township rezoned from Rural Residential to Planned Residential District, two of which received approval at greater development densities than the Benalcazars' original proposed plan. On top of that, the complaint points to statements painting the Benalcazars as part-time residents and outsiders. It also alleges that the referendum's supporters "called the Benalcazars' residency into question" without reason and emphasized that their "children did not attend the area schools." *Id.* at 14–15. Taken as true, these allegations do not amount to a frivolous charge that Genoa Township violated the Benalcazars' equal protection and due process rights by singling them out for unfair treatment.

That zoning changes like this one are potentially subject to a special referendum process does not transform the complaint into a frivolous charge. All statutes in Ohio are subject to referendum. Ohio Const. art. II, §§ 1, 1b; *State ex rel. Ohio Gen. Assembly v. Brunner*, 873 N.E.2d 1232, 1234 (Ohio 2007). So too of all Ohio constitutional provisions, which are subject to the referendum's direct democracy cousin, the initiative. Ohio Const. art. II, §§ 1, 1a. In this context, the existence of a zoning referendum procedure by itself does not cut in one direction or the other. The key point is that people may not directly (through a referendum or initiative) or indirectly (through representatives) accomplish otherwise impermissible ends. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985). A "referendum . . . is the city itself legislating through its voters," *City of Eastlake v. Forest City Enterprises, Inc.*,

426 U.S. 668, 678 (1976) (quotation omitted), just as an initiative amounts to the State itself amending the constitution through its voters. Whether by popular referendum or trustee vote, Genoa Township acted on the Benalcazars' application and the other rezoning applications too, potentially making them responsible for any federal constitutional violations. *Id.*

Even so, the intervenors suggest, the Benalcazars have failed to identify similarly situated property owners whom the Township treated differently. The intervenors emphasize that most of the comparator properties identified in the complaint sit in a different planning area of the Township. But, as they concede, the Benalcazars did identify at least one other property that the Township rezoned in their same planning district. More to the point, the intervenors are barking up the wrong tree. These arguments all go to the plausibility of the complaint. They do not show that the complaint is frivolous.

Our unpublished decision in *Kenney v. Blackwell* does not point in a different direction. 225 F.3d 659 (6th Cir. 2000) (table). A different Genoa Township property owner sought to rezone his property from Rural Residential to Planned Residential District. *Id.* at *1. After securing approval from the trustees, the Township voted to halt the rezoning. *Id.* We affirmed the district court's decision to grant summary judgment to the Township on the property owner's equal protection claim because, as we pointed out, the district court identified "several logical reasons" for the rezoning decision. *Id.* at *3. But *Kenney* resolved a merits inquiry under Civil Rule 56, not a motion to dismiss for lack of jurisdiction due to the frivolousness of the claims. *Kenney* involved different evidence for different comparators at a different stage of litigation.

B.

Independent of their argument that the district court should have granted their motion to dismiss, the intervenors insist that the consent decree did not merit approval either way. While there is some uncertainty about the scope of the district court's order granting the intervenors' motion to intervene, that order clearly permitted a challenge to the consent decree (via the motion to dismiss argument) and thus fairly includes other related challenges to the consent decree.

As shown, the district court had subject-matter jurisdiction over this dispute. These were not frivolous claims beyond the power of the federal courts to hear. And the Benalcazars plainly had standing to protect their property interests and to ensure equal treatment between them and other residents. *Lujan v. Def's of Wildlife*, 504 U.S. 555, 560–61 (1992).

The court also legitimately approved the settlement. Each side took something from the resolution of this local zoning dispute. The Township managed to limit the scope of the development from 64 houses to 56 houses and, to preserve more greenspace than the original proposal contemplated. Those features of the bargain honored the perspective of the trustee who initially disapproved the proposal and the voters who rejected it through the referendum. At the same time, the settlement permitted the Benalcazars to use their property largely as they wished—for a scaled-down development.

In view of this disposition of the case, the Benalcazars' cross-appeal—challenging the district court's rulings on the due process claim and the intervention motion—is moot.

Through it all, we appreciate the intervenors' frustration that their successful referendum was minimized by this lawsuit and the resulting settlement—and that their right to vote in the referendum seemingly came to naught. That the consent decree did not mimic the development plan rejected by the referendum, in truth made significant changes to it, is a partial answer. After that, the intervenors must come to grips with another democratically enacted law—an Ohio statute that, for reasons of its own, allows the Benalcazars and Township to do just what they did. Recall the statutory language that qualifies the referendum right with authority to obtain a consent decree or settlement that pulls back on the result of *any* zoning referendum. "Notwithstanding . . . any vote of the electors on a petition for zoning referendum," it establishes, "a township may settle any court action by a consent decree or court-approved settlement agreement which may include an agreement to rezone any property involved in the action." O.R.C. § 505.07. In this setting, any lingering frustration of the residents of Genoa Township requires them either to change this state law or to exercise their franchise to defeat the trustees who approved the initial zoning proposal and who approved this settlement.

We affirm.