THE STATE EX REL. HEFFELFINGER ET AL. *v.* BRUNNER, SECY. OF STATE.

[Cite as *State ex rel. Heffelfinger v. Brunner,*
116 Ohio St.3d 172, 2007-Ohio-5838.]

(No. 2007–1908—Submitted October 29, 2007—Decided November 1, 2007.)

**Per Curiam.**

{¶ 1} This is an expedited election case for a writ of mandamus to compel the secretary of state to, among other things, certify a referendum petition as sufficient and to place the law being challenged by the petition on the November 6, 2007 election ballot. Because relators have not established either a clear legal right to the requested extraordinary relief or a corresponding clear legal duty on the part of the secretary of state to provide it, we deny the writ.

{¶ 2} On May 22, 2007, the General Assembly enacted Sub.S.B. No. 16 ("S.B. 16"), which became law without the governor's approval. 2007 Ohio Laws File 7. The effective date of the law is September 4, 2007. The title to S.B. 16 sets forth the following purposes for the law:

{¶ 3} "To amend section 503.52 and to enact sections 715.55 and 2907.40 of the Revised Code to restrict the hours of operation of sexually oriented businesses, to prohibit patrons and employees of a sexually oriented business who are not immediate family members from touching each other while on the premises of that business and while the employee is nude or seminude, and to require the state to indemnify a township or municipal corporation for liability incurred in enforcing a resolution or ordinance that regulates adult entertainment establish-ments, is adopted in conformance with the Attorney General's guidance, and is found by a court to be unconstitutional or otherwise legally defective."

{¶ 4} Relator Julie Heffelfinger is the treasurer of a political action committee responsible for filing a petition requesting that S.B. 16 be submitted to a statewide referendum for approval or rejection at the November 6, 2007 general election. Relators Joseph Daniel Vaillancourt, Donna Jean Bowling, and Frank B. Spencer are members of a committee responsible for representing the petitioners in all matters concerning the petition.

{¶ 5} On September 3, 2007, relators filed their referendum petition containing 383,636 signatures with respondent, Secretary of State Jennifer L. Brunner. Under the Ohio Constitution, the petition was required to contain at least 241,366 valid signatures, which must include at least three percent of the electors of at least half of the state's 88 counties. See Sections 1c, Article II, Ohio Constitution ("the signatures of six per centum of the electors shall be required upon a petition to order the submission to the electors of the state for their approval or

rejection, of any law") and 1g, Article II, Ohio Constitution ("Upon all * * * referendum petitions provided for in any of the sections of this article, it shall be necessary to file from each one-half of the counties of the state, petitions bearing the signatures of not less than one-half of the designated percentage of the electors of such county. * * * The basis upon which the required number of petitioners in any case shall be determined shall be the total number of votes cast for the office of governor at the last preceding election therefor").

{¶ 6} On September 10, the secretary issued a directive to the county boards of elections providing them with instructions on how to review the part-petitions. In her directive, the secretary emphasized that "[s]ince no person may sign a petition more than once, it is imperative that boards maintain the names of those persons who signed the original part petitions in order to properly verify the signatures on the supplemental part petitions" and that the boards should photocopy for their files the original part-petitions marked with their notations. The secretary transmitted the part-petitions to the boards of elections for their review.

{¶ 7} By certified letter postmarked September 25, 2007, the secretary of state notified the relator committee members that she had determined that the petition contained an insufficient number of signatures, i.e., it contained a total of only 125,430 valid signatures and met the signature requirement for only 12 counties. In the letter, the secretary of state further noted that "pursuant to Article II, Section 1g of the Ohio Constitution and Sections 3501.05(K) and 3519.16 of the Ohio Revised Code, petitioners are entitled to ten (10) additional days upon issuance of this notification to file additional valid signatures." The committee members received the letter on September 27. In a subsequent letter from the secretary of state to the committee, the secretary noted that under R.C. 3519.16, the committee had ten days from the September 25 notification to file a supplemental petition.

{¶ 8} On October 5, the committee filed a supplemental petition containing approximately 230,000 signatures with the secretary of state. On October 9 and 10, the secretary of state transmitted the additional part-petitions to the county boards of elections. The secretary of state did not retransmit to the elections boards the part-petitions that constituted the original referendum petition. On October 10, the secretary of state issued a directive to the boards advising them to examine each part-petition in accordance with her instructions. The secretary instructed the elections boards to return the part-petitions with their certification of the number of valid signatures no later than October 15. Some boards did not return the supplemental part-petitions with their certification by that date.

{¶ 9} On October 17, 2007, the secretary of state concluded that the additional part-petitions did not contain sufficient valid signatures when added to the total

valid signatures contained in the original petition to meet the signature requirement for a valid referendum petition. The secretary determined that the total of 181,808 valid signatures was less than the 241,366 valid signatures required for submission of S.B. 16 to the electorate at a referendum election.

{¶ 10} On that same date, relators filed this expedited election action for a writ of mandamus to compel the secretary of state (1) "to accept the additional signatures filed on October 5, 2007 as conclusively valid in all respects, add them to the count of valid signatures contained in the original Referendum Petition, and proceed to issue her determination as to the sufficiency of the Referendum Petition," (2) "to accept the additional part-petitions and signatures filed on October 5, 2007 as conclusively valid in all respects that had not been validated and returned to Respondent within the five day period prescribed by R.C. § 3519.16, add them to the count of prior validated signatures contained on the original Referendum Petition and the additional part-petitions that were timely validated and returned, and proceed to issue her determination as to the sufficiency of the Referendum Petition," (3) "to certify the Referendum Petition as sufficient and submit the Referendum Petition question to the electors at the November 6, 2007 General Election," or (4) "to return the original part-petitions to the county boards of elections together with the additional part-petitions and signatures filed on October 5, 2007 for validation as required by R.C. 3519.16."

{¶ 11} On October 18, we ordered the parties to submit evidence and briefs on a more accelerated schedule than that provided for expedited election cases under S.Ct.Prac.R. X(9). Briefing was completed on Friday, October 26. Although the court denied the motion of David Miller, Bruce Purdy, and Citizens for Community Values to intervene as respondents, the prospective intervenors properly filed an amicus curiae brief in support of the secretary of state. See *State ex rel. Citizen Action for a Livable Montgomery v. Hamilton Cty. Bd. of Elections*, 115 Ohio St.3d 437, 2007-Ohio-5379, 875 N.E.2d 902, ¶ 24.

{¶ 12} This cause is now before us upon the merits.

## Mandamus

{¶ 13} To be entitled to the requested writ, relators must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of the secretary of state to provide it, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Evans v. Blackwell*, 111 Ohio St.3d 437, 2006-Ohio-5439, 857 N.E.2d 88, ¶ 18. Given the proximity of the November 6 election, relators have established that they lack an adequate remedy in the ordinary course of law. *State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 115 Ohio St.3d 405, 2007-Ohio-5346, 875 N.E.2d 578, ¶ 8.

### Presumptive Validity of Statewide Petitions under
### Section 1g, Article II, Ohio Constitution

{¶ 14} For the remaining requirements, to establish the requisite legal right and legal duty, relators first claim that they are entitled to a writ of mandamus to compel the secretary of state to place S.B. 16 on the November 6 election ballot because the supplemental part-petitions they filed with the secretary of state on October 5 were conclusively valid and when the total number of signatures contained on them are added to the valid signatures in the original petition, the entire petition met the applicable signature requirements.

{¶ 15} "The constitutional right of citizens to referendum is of paramount importance," and the "reserved power of referendum applies to every law passed in this state." *State ex rel. Ohio Gen. Assembly v. Brunner,* 115 Ohio St.3d 103, 2007-Ohio-4460, 873 N.E.2d 1232, ¶ 8–9; see, also, *State ex rel. Laughlin v. James,* 115 Ohio St.3d 231, 2007-Ohio-4811, 874 N.E.2d 1145, ¶ 25. "The Ohio Constitution contains references to three dates when a law passed by the General Assembly shall go into effect: 90 days after it shall have been filed by the Governor in the office of the Secretary of State, Section 1c, Article II, Ohio Constitution; upon approval by a majority of those voting upon a referendum, Section 1c, Article II, Ohio Constitution; and, as contemplated by Section 1g, Article II, Ohio Constitution and R.C. 3519.16, upon proof that a referendum petition contains an insufficient number of valid signatures to have the matter submitted to the electorate of the state of Ohio." *Thornton v. Salak,* 112 Ohio St.3d 254, 2006-Ohio-6407, 858 N.E.2d 1187, syllabus.

{¶ 16} Section 1g, Article II of the Ohio Constitution provides:

{¶ 17} "The petition and signatures upon such petitions shall be presumed to be in all respects sufficient, unless not later than forty days before the election, it shall be otherwise proved and in such event ten additional days shall be allowed for the filing of additional signatures to such petition."

{¶ 18} By its terms, Section 1g bars legal challenges to the sufficiency of a statewide initiative or referendum petition made less than 40 days before the election at which the proposal or law is to be submitted to the electorate. See, e.g., *State ex rel. Schwartz v. Brown* (1972), 32 Ohio St.2d 4, 61 O.O.2d 151, 288 N.E.2d 821, paragraph three of the syllabus.

{¶ 19} Relators assert that because supplemental part-petitions are considered part of the petition, see, e.g., *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 295, 649 N.E.2d 1205, and they were filed less than 40 days before the November 6 election, the secretary of state was required to conclusively presume the validity of the signatures contained on the supplemental part-petitions under Section 1g and *State ex rel. Essig v. Blackwell,* 103 Ohio St.3d 481, 2004-Ohio-5586, 817 N.E.2d 5.

{¶ 20} Relators' claims lack merit. Nothing in Section 1g refers to the presumed validity of additional signatures contained on supplemental part-petitions filed less than 40 days before an election.

{¶ 21} Nor does our holding in *Essig* require a contrary result. In that case, we held that Section 1g barred relators' attempt to raise a claimed defect in a supplemental petition for a statewide initiative that relators had previously unsuccessfully raised in their challenge to the original petition:

{¶ 22} "Relators assert that because this action challenges the sufficiency of the supplemental petition rather than the original initiative petition, the 40–day provision in Section 1g does not apply. But the original initiative petition and supplemental petition both lacked the summary and certification. Therefore, once the 40–day deadline was reached, the original initiative petition and supplemental petition were presumptively valid for *this claim.* * * *

{¶ 23} " * * * [A]dopting relators' contention would permit persons opposing a proposed statewide initiative to *either*—as relators do in this case—raise an issue with regard to a supplemental petition less than 40 days before the election when they have previously raised and lost on the same issue with regard to the original petition *or* fail to object to a petition until within 39 days of the election and then mount an 11th-hour challenge to a supplemental petition for a defect they could have previously raised against the original petition. We will not sanction either of these options. * * * Notably, relators are *not* challenging the supplemental petition based on alleged defects that were not also contained in the initial petition." (Emphasis sic.) *Essig,* 103 Ohio St.3d 481, 2004-Ohio-5586, 817 N.E.2d 5, ¶ 27–28.

{¶ 24} Unlike the claimed defects in the supplemental petition in *Essig,* the claimed defects in the supplemental petition here—defects in the additional signatures contained thereon—were not contained in the original petition. Thus, the invalidity of the signatures on the supplemental petition could not have been "otherwise proved" not later than 40 days before the November 6 election, and Section 1g did not bar the secretary of state from refusing to apply the presumption claimed by relators.

{¶ 25} Accepting relators' construction of Section 1g would permit petitioners to correct an insufficient referendum petition by filing a supplemental petition consisting entirely of invalid signatures less than 40 days before the election. We will not adopt this absurd result, which would authorize election fraud. *Essig,* at ¶ 28, quoting *Castleberry v. Evatt* (1946), 147 Ohio St. 30, 33 O.O. 197, 67 N.E.2d 861, paragraph two of the syllabus (" 'In the construction of constitutional provisions or legislative enactments unreasonable or absurd consequences should, if possible, be avoided' "). Moreover, as the secretary observes, "[t]o require the Secretary of State forthwith to transmit the parts of the petition to boards of

elections for the purpose of determining the sufficiency of the signatures does not restrict or limit the referendum power." *State ex rel. Herbert v. Mitchell* (1939), 136 Ohio St. 1, 6, 15 O.O. 330, 22 N.E.2d 907, construing the General Code versions of R.C. 3519.15 and 3519.16.

### Validation of Statewide Supplemental Petition: R.C. 3519.16

{¶ 26} Relators next contend that they are entitled to the submission of S.B. 16 to the electorate because the secretary of state lacked authority under any pertinent law to transmit the supplemental part-petitions to the boards of elections to validate the signatures contained in the part-petitions.

{¶ 27} Section 1g, Article II of the Ohio Constitution does not specify the procedure by which signatures contained in original and supplemental statewide referendum petitions are to be verified. Although Section 1g is a self-executing provision, laws may be passed to facilitate its operation. *In re Protest Filed by Citizens for the Merit Selection of Judges, Inc.* (1990), 49 Ohio St.3d 102, 104, 551 N.E.2d 150. Nonconflicting statutory provisions and procedures are applicable. See *State ex rel. Vickers v. Summit Cty. Council,* 97 Ohio St.3d 204, 2002-Ohio-5583, 777 N.E.2d 830, ¶ 25, 31 (statutory provisions and procedures that do not conflict with Constitution apply to charter amendment petitions).

{¶ 28} The secretary of state relied on R.C. 3519.15 and 3519.16 as authority for transmitting the original and supplemental part-petitions to the boards of elections for verification of the signatures.

{¶ 29} R.C. 3519.15 provides:

{¶ 30} "Whenever any initiative or referendum petition has been filed with the secretary of state, he shall forthwith separate the part-petitions by counties and transmit such part-petitions to the boards of elections in the respective counties. The several boards shall proceed at once to ascertain whether each part-petition is properly verified, and whether the names on each part-petition are on the registration lists of such county * * *."

{¶ 31} R.C. 3519.16 provides:

{¶ 32} "The circulator of any part-petition, the committee interested in the petition, or any elector may file with the board of elections a protest against the board's findings made pursuant to section 3519.15 of the Revised Code. * * *

{¶ 33} "The properly verified part-petitions, together with the report of the board, shall be returned to the secretary of state not less than fifty days before the election, provided that, in the case of an initiated law to be presented to the general assembly, the boards shall promptly check and return the petitions together with their report. The secretary of state shall notify the chairperson of the committee in charge of the circulation as to the sufficiency or insufficiency of the petition and the extent of the insufficiency.

{¶ 34} *"If the petition is found insufficient because of an insufficient number of valid signatures, the committee shall be allowed ten additional days after the notification by the secretary of state for the filing of additional signatures to the petition.* The part-petitions of the supplementary petition that appear to the secretary of state to be properly verified, upon their receipt by the secretary of state, shall forthwith be forwarded to the boards of the several counties together with the part-petitions of the original petition that have been properly verified. They shall be immediately examined and passed upon as to the validity and sufficiency of the signatures on them by each of the boards and returned within five days to the secretary of state with the report of each board.* No signature on a supplementary part-petition that is the same as a signature on an original part-petition shall be counted. The number of signatures in both the original and supplementary petitions, properly verified, shall be used by the secretary of state in determining the total number of signatures to the petition that the secretary of state shall record and announce. *If they are sufficient, the amendment, proposed law, or law shall be placed on the ballot as required by law.* If the petition is found insufficient, the secretary of state shall notify the committee in charge of the circulation of the petition." (Emphasis added.)

{¶ 35} In construing these statutes, "our paramount concern is the legislative intent in enacting the statute[s]." *State ex rel. Steele v. Morrissey,* 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. "To discern this intent, we first consider the statutory language, reading words and phrases in context and construing them in accordance with rules of grammar and common usage." *State ex rel. Choices for South–Western City Schools v. Anthony,* 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 40.

{¶ 36} Relators assert that the portion of R.C. 3519.16 authorizing the secretary of state to forward supplemental part-petitions to boards of elections for verification of signatures is restricted to supplementary petitions, which are constitutionally distinct from referendum and initiative petitions. Relators are correct that under Section 1b, Article II of the Ohio Constitution, "supplementary petition" refers to a petition demanding an election on a statewide initiative after an initiative petition has been presented to the General Assembly and the proposed law either is not passed, is passed in amended form, or is not acted upon within four months after it is received.

{¶ 37} Nevertheless, a thorough examination of R.C. 3519.16 establishes that the General Assembly has not restricted the phrase "supplementary petition" as used in the statute to petitions filed pursuant to Section 1b, Article II. First, R.C. 3519.16 begins broadly by referring to "any part-petition," which includes referendum part-petitions. Second, the common meaning of "supplementary" is "added as a supplement; additional." Webster's Third New International Dictio-

nary (1986) 2297. Again, this would include supplemental part-petitions to a referendum petition. Third, notwithstanding relators' argument to the contrary, the sentence in R.C. 3519.16 stating that if the number of valid signatures in the original and supplementary petitions is sufficient, "the amendment, proposed law, or law shall be placed on the ballot" supports its applicability to referendum petitions. The word "law" refers to the statute to be referred as requested in the referendum petition. See, e.g., Section 1c, Article II of the Ohio Constitution, which requires a certain percentage of valid signatures on a petition to order a referendum "of any law," and R.C. 3519.05, which notes that the form of a statewide referendum petition must contain the title and text of "the law" to be referred.

{¶ 38} In fact, we have previously recognized the applicability of the procedure in R.C. 3519.15 and 3519.16 in a case involving a statewide referendum petition:

{¶ 39} "Of further relevance is R.C. 3519.15, which provides that the Secretary of State shall separate the part-petitions by county and transmit them to the respective county boards of elections to determine the sufficiency of the signatures. R.C. 3519.16 provides that the Secretary shall then notify the referendum committee of the petition's sufficiency, and, if the petition lacks sufficient signatures, the extent of the insufficiency. If the petition lacks a sufficient number of valid signatures, the committee shall have ten additional days after the Secretary's notification to submit additional signatures. After the county boards of elections review the validity and sufficiency of the supplemental signatures, the Secretary provides final notification to the committee if the petition still lacks a sufficient number of valid signatures." *Thornton,* 112 Ohio St.3d 254, 2006-Ohio-6407, 858 N.E.2d 1187, ¶ 18.

{¶ 40} Therefore, R.C. 3519.16, which does not conflict with Section 1g, Article II of the Ohio Constitution, authorizes the secretary of state to transmit relators' supplemental referendum part-petitions to the boards of elections for signature verification.

### R.C. 3519.16 Requirement that Supplemental Part–Petitions Be Returned by Boards of Elections to Secretary of State within Five Days

{¶ 41} Relators next claim that the boards of elections did not comply with the R.C. 3519.16 requirement that following the secretary of state's transmission of the supplemental part-petitions to the boards of elections, the boards must determine the validity and sufficiency of the signatures contained in the part-petitions and return them "within five days to the secretary of state with the report of each board."

{¶ 42} Relators contend that for those part-petitions that were not returned by the boards of elections within the five-day period, the secretary of state "had a

clear legal duty under R.C. § 3519.16 to accept as conclusively valid such additional part-petitions and the signatures thereon and add them to all prior validated signatures and to certify the sufficiency of the Referendum Petition and submit Sub. S.B. No. 16 to the electors for their approval or rejection." From the work log attached to the secretary of state's October 15 press release, it appears that if the total number of signatures on these part-petitions is conclusively considered to be valid, there would be a sufficient number of signatures to require a referendum election on S.B. 16.

{¶ 43} Nothing in R.C. 3519.16 specifies, however, that a failure on the part of boards of elections to return the part-petitions to the secretary of state within the five-day period creates any conclusive presumption that the signatures contained in those part-petitions are valid. In other election cases, we have held that when a statute limits the time for boards of elections to determine the sufficiency of petitions but does not specify a penalty for noncompliance, the purpose of the statute is merely to promote promptness. Lack of promptness has no effect on the petitions themselves. *State ex rel. Phillips v. Lorain Cty. Bd. of Elections* (2001), 93 Ohio St.3d 535, 540, 757 N.E.2d 319 ("The purpose, however, of the timing requirements of R.C. 3513.263 is to have election officials act promptly; they are not designed to render invalid an otherwise valid petition nor to give validity to an invalid petition when not acted upon within the proper time"); *State ex rel. Svete v. Geauga Cty. Bd. of Elections* (1965), 4 Ohio St.2d 16, 17, 33 O.O.2d 139, 212 N.E.2d 420 ("The mere failure of the board to declare the petition void within the statutory time does not render the petition valid since the statute does not state that the petition shall be valid if not declared void by the board within the time named in the statute").

{¶ 44} Therefore, in accordance with *Phillips* and *Svete,* relators have not established a clear legal duty on the part of the secretary of state to declare valid all signatures on those supplemental part-petitions that were not returned by boards of elections within the statutory five-day period.

{¶ 45} Although some of the boards violated the five-day requirement of R.C. 3519.16, it is clear from the secretary of state's work log that by the time of the secretary of state's October 17 insufficiency determination, which was only two days after the statutory deadline, she had received from the boards of elections all of their verification reports concerning the sufficiency of the signatures contained on the supplemental part-petitions. The primary purpose of the requirement in R.C. 3519.16—that the boards promptly make their sufficiency determinations of supplemental part-petitions—was served. There is also no evidence here that the minimal additional time taken by some of the boards of elections was intended to impair relators' referendum rights.

{¶ 46} Ultimately, it is the sole province of the General Assembly to weigh the interest in promptness against the interest in verifying petition signatures. If the General Assembly had determined that promptness outweighs accuracy, it would have made its determination clear in the statute by specifying that any signatures not declared void within the five-day period must be declared valid. See *State ex rel. Canales–Flores v. Lucas Cty. Bd. of Elections*, 108 Ohio St.3d 129, 2005-Ohio-5642, 841 N.E.2d 757, ¶ 40, quoting *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 14 (" 'The Ohio General Assembly, and not this court, is the proper body to resolve public policy issues' "). "We cannot create the legal duty enforceable in mandamus." *State ex rel. Lewis v. Rolston*, 115 Ohio St.3d 293, 2007-Ohio-5139, 874 N.E.2d 1200, ¶ 22. The creation of any duty is the distinct function of the General Assembly. *State ex rel. Boccuzzi v. Cuyahoga Cty. Bd. of Commrs.*, 112 Ohio St.3d 438, 2007-Ohio-323, 860 N.E.2d 749, ¶ 18.

{¶ 47} Therefore, even though some boards of elections did not comply with the five-day requirement of R.C. 3519.16 to return the part-petitions, because the statute does not state that the signatures on the supplemental part-petitions are valid if not declared void within the statutory period, the secretary was free to rely on these boards' later-submitted sufficiency determinations to determine the total number of valid signatures on the supplemental petition. Thus, relators are not entitled to the requested writ.

R.C. 3519.16 Requirement that Supplemental Part–Petitions Be Forwarded to Boards of Elections Together with Part–Petitions of the Original Petition

{¶ 48} Relators finally claim that they are entitled to a writ of mandamus to compel the secretary of state to transmit the original part-petitions with the supplemental part-petitions to the boards of elections so that the boards can conduct their review of the signatures pursuant to R.C. 3519.16.

{¶ 49} R.C. 3519.16 provides:

{¶ 50} "The part-petitions of the supplementary petition that appear to the secretary of state to be properly verified, upon their receipt by the secretary of state, shall forthwith be forwarded to the boards of the several counties together with the part-petitions of the original petition that have been properly verified. They shall be immediately examined and passed upon as to the validity and sufficiency of the signatures on them by each of the boards and returned within five days to the secretary of state with the report of each board. No signature on a supplementary part-petition that is the same as a signature on an original part-petition shall be counted."

{¶ 51} Relators assert that by not transmitting the previously verified original part-petitions with the supplemental part-petitions, the secretary of state violated

R.C. 3519.16 and prevented the boards from reviewing the validity of the signatures contained on the original part-petitions.

{¶ 52} The secretary of state did violate R.C. 3519.16 by not transmitting the original part-petitions to the boards of elections when she transmitted the supplemental part-petitions to them. But relators are incorrect when they assert that the effect of this violation was to deprive them of the board's review of the validity of the original part-petitions.

{¶ 53} Nothing in R.C. 3519.16 suggests that the purpose of the requirement of transmitting to elections boards the previously verified original part-petitions with the unverified supplemental part-petitions is to permit the boards to conduct a second determination of the validity of the signatures contained in the original part-petitions. The "[t]hey" and "them" in the R.C. 3519.16 sentence "[t]hey shall be immediately examined and passed upon as to the validity and sufficiency of the signatures on them by each of the boards," when read in context with the remainder of the statute, refer to the unverified supplemental part-petitions and not the previously verified original part-petitions.

{¶ 54} This conclusion is evident from the sentence in R.C. 3519.16 that follows the ones relied on by relators: "No signature on a supplementary part-petition that is the same as a signature on an original part-petition shall be counted." This indicates that the purpose of the requirement that the previously verified original part-petitions be forwarded to the boards of elections with the unverified supplemental part-petitions is to permit the boards to determine if any signatures on the supplemental part-petitions should not be counted because they already appear on the original part-petitions. By attempting to selectively ignore this sentence, relators misconstrue R.C. 3519.16. See *State ex rel. Thompson v. Spon* (1998), 83 Ohio St.3d 551, 554, 700 N.E.2d 1281, quoting *State v. Wilson* (1997), 77 Ohio St.3d 334, 336, 673 N.E.2d 1347 (" 'In reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body' ").

{¶ 55} In fact, the secretary of state had already instructed the boards of elections to photocopy the original part-petitions when they were transmitted for examination. And each board of elections had been directed by the secretary of state to place an identifying mark or computer code on an elector's registration record to ensure that the elector's signature is not counted more than once for the same petition.

{¶ 56} Therefore, relators have not been harmed by the failure of the secretary of state to transmit the original part-petitions to the boards of elections with the supplemental part-petitions. The boards of elections had access to copies of the original part-petitions, and the original part-petitions were being used only to delete repetitive signatures in the supplemental part-petitions. Relators are thus

not entitled to the requested writ, because it will not help them achieve their ultimate objective of having S.B. 16 submitted to a statewide referendum. "Mandamus will not issue to compel a vain act." *State ex rel. Moore v. Malone*, 96 Ohio St.3d 417, 2002-Ohio-4821, 775 N.E.2d 812, ¶ 38.

## Conclusion

{¶ 57} Based on the foregoing, relators have not established either a clear legal right to the requested extraordinary relief in mandamus or a corresponding clear legal duty on the part of the secretary of state to provide the requested relief. Therefore, we deny the writ. This result "is consistent with our duty to defer to the Secretary of State's interpretation of election law if it is subject to two different, but equally reasonable, interpretations." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 22. Because the secretary of state's interpretation of the applicable election law, including Section 1g, Article II of the Ohio Constitution and R.C. 3519.16, is not unreasonable, we defer to it. *State ex rel. Evans v. Blackwell*, 111 Ohio St.3d 1, 2006-Ohio-4334, 854 N.E.2d 1025, ¶ 34. By so holding, we need not address the secretary's additional claim that this case is barred by laches. *State ex rel. Reese v. Cuyahoga Cty. Bd. of Elections*, 115 Ohio St.3d 126, 2007-Ohio-4588, 873 N.E.2d 1251, ¶ 35.

Writ denied.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., concurs in judgment only.

---

The McTigue Law Group, Donald J. McTigue, Mark A. McGinnis, and John M. Stephan, for relators.

Marc Dann, Attorney General, and Damian W. Sikora, Pearl M. Chin, and Richard N. Coglianese, Assistant Attorneys General, for respondent.

Langdon & Hartman, L.L.C., and David R. Langdon; Alliance Defense Fund and Jeffrey A. Shafer, urging denial of the writ for amici curiae, David Miller, Bruce Purdy, and Citizens for Community Values.