NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-224

THE STATE EX REL. FOCKLER ET AL. *v.* HUSTED.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Fockler v. Husted,* Slip Opinion No. 2017-Ohio-224.]

*Elections—Mandamus—R.C. 3517.01 and 3501.01—Secretary of state did not abuse discretion or act in clear disregard of applicable law in denying relators' request for recognition of political-party status, because a political party may not be revived based on percentage of vote received by candidates who appeared on ballot as independents—Writ denied.*

(No. 2016-1863—Submitted January 13, 2017—Decided January 20, 2017.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} Relators, John Fockler, Kevin Knedler, M. Ann Leech, Scott Pettigrew, and Harold D. Thomas (hereinafter "Fockler"), are the members of the committee that nominated Gary Johnson and William Weld to appear on Ohio's

November 2016 ballot as independent candidates for president and vice president of the United States.[1]  After Johnson and Weld jointly received 3.17 percent of the total votes cast in Ohio for president and vice president, Fockler brought this mandamus action seeking to require respondent, Ohio Secretary of State Jon Husted, to recognize relators as a political party under R.C. 3517.01.

{¶ 2} We conclude that relators are not entitled to the writ, because they do not qualify as a political party.  Their candidates were nominated as independent candidates without any political-party affiliation, and R.C. 3501.01 and 3517.01 permit only *established* political parties to retain ballot access if they receive at least 3 percent of the vote.

### *Factual and procedural background*

{¶ 3} Gary Johnson and William Weld appeared as independent presidential and vice-presidential candidates on Ohio's November 2016 ballot.  At that election, they received 3.17 percent of the vote.

{¶ 4} On December 2, 2016, relators submitted a letter to Husted requesting that he recognize them as a political party under R.C. 3517.01(A)(1)(a) because their candidates had received more than 3 percent of the vote at the November election.  In the letter, they requested recognition with a party identification of "Libertarian."  They attached an additional letter from the Libertarian Party of Ohio joining in the request and consenting to relators' use of "Libertarian," "Libertarian Party," and "Libertarian Party of Ohio" for the purpose of party recognition.

{¶ 5} Husted denied the request on the grounds that the placement of independent candidates on the ballot is insufficient to create a political party in Ohio.  Fockler then filed this mandamus action seeking to require Husted to recognize relators as a political party under R.C. 3517.01(A)(1)(a).

---

[1] The committee originally nominated Charles Earl and Kenneth Moellman as "placeholder" candidates.  After Earl and Moellman withdrew their candidacies, the committee filed documentation under R.C. 3513.31 to substitute Johnson and Weld as candidates.

**{¶ 6}** Although Fockler improperly filed the action as an automatically expedited election case under S.Ct.Prac.R. 12.08, *see* __ Ohio St.3d __, 2016-Ohio-8271, __ N.E.3d __, we granted his unopposed motion for expedited consideration, __ Ohio St.3d __, 2016-Ohio-8459, __ N.E.3d __.

## *Analysis*

**{¶ 7}** Fockler requests a writ of mandamus to compel Husted to recognize relators as a political party so that they may hold a primary election as the "Libertarian" party and have candidates appear on the ballot as "Libertarian" party candidates. Fockler contends that relators are a "group of voters" whose candidates received more than 3 percent of the vote for president and vice president. Therefore, he argues that relators have met the requirements of R.C. 3517.01(A)(1)(a) and are entitled to recognition as a political party that may conduct a primary election to nominate candidates on May 2, 2017.

**Mandamus**

**{¶ 8}** To be entitled to a writ of mandamus, Fockler "must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of the secretary of state to provide it, and the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Heffelfinger v. Brunner*, 116 Ohio St.3d 172, 2007-Ohio-5838, 876 N.E.2d 1231, ¶ 13. Fockler must prove that he is entitled to the writ by clear and convincing evidence. *State ex rel. Clough v. Franklin Cty. Children Servs.*, 144 Ohio St.3d 83, 2015-Ohio-3425, 40 N.E.3d 1132, ¶ 10.

**{¶ 9}** Furthermore, " '[i]n extraordinary actions challenging the decisions of the Secretary of State and boards of elections, the standard is whether they engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions.' " *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 9, quoting *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11. There is no allegation of fraud or corruption here. Therefore, the dispositive issue is whether

Husted abused his discretion or clearly disregarded the applicable law in determining that relators do not qualify as a political party.

**Process for establishing a political party**

{¶ 10} R.C. 3517.01(A)(1) sets forth the process by which a group of voters may qualify as a political party:

A political party within the meaning of Title XXXV of the Revised Code is any group of voters that meets either of the following requirements:

(a) Except as otherwise provided in this division, at the most recent regular state election, the group polled for its candidate for governor in the state or nominees for presidential electors at least three per cent of the entire vote cast for that office. A group that meets the requirements of this division remains a political party for a period of four years after meeting those requirements.

(b) The group filed with the secretary of state, subsequent to its failure to meet the requirements of division (A)(1)(a) of this section, a party formation petition that meets all of the following requirements: * * *.

{¶ 11} Fockler contends that R.C. 3517.01(A)(1) is the only relevant provision in determining whether relators qualify as a political party. Husted, however, argues that this statute must be considered in pari materia with R.C. 3501.01 in order to make that determination.

{¶ 12} R.C. 3501.01 defines various terms for purposes of the election law. R.C. 3501.01(F) defines "political party" as any group of voters who meet the requirements of R.C. 3517.01 for the formation and existence of a political party.

A "minor political party" is a political party that meets either of the following requirements:

> (a) Except as otherwise provided in this division, the political party's candidate for governor or nominees for presidential electors received less than twenty per cent but not less than three per cent of the total vote cast for such office at the most recent regular state election. A political party that meets the requirements of this division remains a political party for a period of four years after meeting those requirements.
>
> (b) The political party has filed with the secretary of state, subsequent to its failure to meet the requirements of division (F)(2)(a) of this section, a petition that meets the requirements of section 3517.01 of the Revised Code.
>
> A newly formed political party shall be known as a minor political party until the time of the first election for governor or president which occurs not less than twelve months subsequent to the formation of such party, after which election the status of such party shall be determined by the vote for the office of governor or president.

R.C. 3501.01(F)(2).

{¶ 13} Husted correctly asserts that the political-party-formation law (R.C. 3517.01) must be interpreted in concert with the election-law definitions of "political party" and "minor political party" (R.C. 3501.01). " ' "[A]ll statutes which relate to the same general subject matter must be read *in pari materia*. And in reading such statutes *in pari materia*, and construing them together, this court must give such a reasonable construction as to give the proper force and effect to

each and all such statutes." ' " *State v. Cook*, 128 Ohio St.3d 120, 2010-Ohio-6305, 942 N.E.2d 357, ¶ 45, quoting *United Tel. Co. of Ohio v. Limbach*, 71 Ohio St.3d 369, 372, 643 N.E.2d 1129 (1994), quoting *Johnson's Mkts., Inc. v. New Carlisle Dept. of Health*, 58 Ohio St.3d 28, 35, 567 N.E.2d 1018 (1994). Because R.C. 3501.01(F) and 3517.01(A) relate to the same subject matter—the recognition of political parties—they should be read in pari materia.

{¶ 14} When considered together, these statutes make clear that a political group cannot obtain recognized political-party status based on votes obtained by independent candidates. As Husted notes, the 3 percent vote required for a group to "remain[ ]" a political party must be received by the "political party's candidate," as specified in R.C. 3501.01(F)(2)(a). Fockler's candidates could not be the "political party's candidate[s]" because they were nominated and appeared on the ballot as *independent* candidates, unaffiliated with any political party.[2]

{¶ 15} Moreover, because relators were not a recognized political party prior to the election, they are not eligible to "remain[ ]" a political party based on the outcome of the election. As Husted aptly states, only already-recognized political parties are eligible to "remain[ ]" a political party.

{¶ 16} For Fockler to revive a previously recognized political party, Fockler must file a party-formation petition that meets the requirements of R.C. 3501.01(F)(2)(b) and 3517.01(A)(1)(b). The Libertarian Party, which was previously recognized in Ohio, lost political-party status in 2014 after its failure to properly nominate a candidate for the office of governor. *See Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 424 (6th Cir.2014). Without a candidate on the ballot at that election, the Libertarian Party could not receive the vote percentage required

---

[2] " 'Independent candidate' means any candidate who claims not to be affiliated with a political party, and whose name has been certified on the office-type ballot at a general or special election through the filing of a statement of candidacy and nominating petition, as prescribed in section 3513.257 of the Revised Code." R.C. 3501.01(I).

to remain a political party. And after a recognized political party fails to receive 3 percent of the vote, both statutory provisions require it to "file[ ] with the secretary of state" a petition that meets the statutory requirements in order to regain political-party status. R.C. 3501.01(F)(2)(b) and 3517.01(A)(1)(b).

{¶ 17} This conclusion is consistent with two authorities that have previously considered the political-party-formation provisions of R.C. 3501.01 and 3517.01.

{¶ 18} First, in *Libertarian Party of Ohio v. Husted*, 831 F.3d 382, 388 (6th Cir.2016), the United States Court of Appeals for the Sixth Circuit briefly described the process for qualifying as a minor political party in Ohio, stating that a party may qualify by obtaining at least 3 percent of the vote and that, alternatively, "*new political parties that were not on the ballot in the preceding election * * * may qualify as a minor party through petition.*" (Emphasis added.)

{¶ 19} Second, the Legislative Service Commission's final analysis of 2013 Am.Sub.S.B. No. 193, the bill that established the current party-formation process, states that the bill "[l]owers the percentage of vote required for a party to retain its status as a political party and revises the process for a new party to gain recognition by filing a party formation petition." Ohio Legislative Service Commission, Final Analysis of Am.Sub.S.B. No. 193, as passed by the General Assembly (2014), at 1. "Although this court is not bound" by the analyses prepared by the Ohio Legislative Service Commission, "we may refer to them when we find them helpful and objective." *Meeks v. Papadopulos*, 62 Ohio St.2d 187, 191, 404 N.E.2d 159 (1980).

{¶ 20} Therefore, we conclude that Husted properly construed R.C. 3501.01 and 3517.01 together in determining that only established political parties may retain ballot access based on their candidates' receiving a specified percentage of the vote.

**{¶ 21}** Fockler contends, to the contrary, that under the plain language of R.C. 3517.01, read alone, relators qualify as a political party. He insists that the political-party-formation provisions in R.C. 3501.01 are distinct and inapplicable, as they apply only to a "political party," while the provisions of R.C. 3517.01 apply to a "group of voters." Because Johnson and Weld polled more than 3 percent of the vote for president and vice president, Fockler contends that the committee meets the requirement of a "group of voters" whose candidates polled at least 3 percent and, therefore, that the group "remains a political party" for the next four years.

**{¶ 22}** However, Fockler's interpretation necessarily divides the R.C. 3517.01 political-party-formation provisions from the definitions of "political party" and "minor political party" that apply to the entire election law. *See* R.C. 3501.01 (providing that definitions set forth in section 3501.01 apply to "the sections of the Revised Code relating to elections and political communications"). These provisions cannot reasonably be considered independent of one another.

**{¶ 23}** As support for their position, relators cite an affidavit from Richard Winger, the editor of Ballot Access News, who purports to set forth the history of Ohio's ballot-access laws.[3] Winger contends that, going back to at least 1914, "associations" were statutorily permitted to gain ballot access based on the percentage of the vote received by their candidates, with the petition process for establishing new parties not enacted until 1929.

**{¶ 24}** Even if Winger's affidavit had been properly sworn, Fockler's reliance on it is misplaced. Based on the affidavit, Fockler contends that "Ohio has continuously since 1914" permitted groups of voters to establish political parties by running independent candidates for office. But the statute that Winger and

---

[3] Winger's affidavit fails to satisfy the requirements of S.Ct.Prac.R. 12.06, which requires affidavits to be made on personal knowledge. *See State ex rel. Commt. for the Charter Amendment for an Elected Law Director v. Bay Village*, 115 Ohio St.3d 400, 2007-Ohio-5380, 875 N.E.2d 574, ¶ 12-13.

Fockler cite as being "continuously" in effect was invalidated in 2006. *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir.2006). Therefore, a vote-percentage process for groups of voters to establish political parties has not been in continuous effect since 1914.

### *Conclusion*

**{¶ 25}** Fockler is unable to demonstrate that he is entitled to a writ of mandamus, because he has failed to show that Husted either abused his discretion or acted in clear disregard of the applicable law. Husted correctly determined that in order for the "Libertarian" party to regain ballot access, it must file a petition that meets the statutory requirements. R.C. 3501.01 and 3517.01 do not authorize the formation of a new or revived political party based on the percentage of the vote received by candidates who appeared on the ballot as independents.

Writ denied.

O'CONNOR, C.J., and O'DONNELL, FISCHER, and DEWINE, JJ., concur.

KENNEDY and FRENCH, JJ., concur in judgment only.

O'NEILL, J., dissents, with an opinion.

_____

**O'NEILL, J., dissenting.**

**{¶ 26}** Respectfully, I must dissent. Relators have filed this action by virtue of the fact that their candidates captured more than 3 percent of the statewide vote for president and vice president in the 2016 general election. They seek recognition as the Libertarian Party to participate in Ohio's 2017 primary election and beyond. Respondent, Ohio Secretary of State Jon Husted, opposes relators' request based on the fact that relators' candidates did not run under the Libertarian Party banner in 2016. That is, at best, circular reasoning. It would not have been possible for Gary Johnson and Bill Weld to run as the candidates of the Libertarian Party as there was no such party recognized by the state of Ohio. That is what this lawsuit is all about. Political parties have to start somewhere. Relators followed the rules

that define what constitutes a political party, and now the state's chief elections officer asks this court to twist those rules around to keep the seeds of democracy from sprouting.

{¶ 27} I agree that reasonable administrative interpretations of the Revised Code are owed deference from the courts; however, I do not think that respondent's interpretation of R.C. 3501.01 and 3517.01, read together in pari materia, is reasonable. At issue in this matter are the statutory definitions of the terms "political party" in R.C. 3517.01(A)(1) and "minor political party" in R.C. 3501.01(F)(2). Respondent would like us to read these provisions together to conclude that relators cannot be a "political party" because they do not qualify as a "minor political party." This interpretation is unreasonable. The umbrella section immediately above the definition of "minor political party," R.C. 3501.01(F), defines "political party" as "*any group of voters* meeting the requirements set forth in section 3517.01 of the Revised Code for the formation and existence of a political party." (Emphasis added.) Using the same phrase, "*any group of voters*" (emphasis added), R.C. 3517.01(A)(1) provides that a group of voters may acquire political-party status by meeting either of two alternative requirements, (a) or (b). R.C. 3517.01(A)(1)(a) provides that the definition of "political party" is met if "at the most recent regular state election, *the group* polled for its candidate for governor in the state or nominees for presidential electors at least three per cent of the entire vote cast for that office." (Emphasis added.) That is exactly what happened here.

{¶ 28} R.C. 3501.01(F)(2) and 3517.01(A)(1) define different terms. Respondent's interpretation would require this court to supplement the plain language of these statutes to make one definition subordinate to the other, which is an improper invasion of the role of the General Assembly.

{¶ 29} The state must hold primary elections "for the purpose of nominating persons as candidates of *political parties* for election to offices to be voted for at the succeeding general election." R.C. 3513.01(A). (Emphasis added.) The only

question remaining for this court to answer is whether the named relators are, as they allege, a "group" that "polled for its * * * nominees for presidential electors at least three per cent of the entire vote cast for that office," R.C. 3517.01(A)(1)(a). Relators allege that they are the "group of voters" that nominated Johnson and Weld to appear on the most recent presidential-election ballot, that the candidates they nominated received 3.17 percent of the total votes cast in that election, and that they would now like recognition as a political party. Respondent denies only one of these allegations in his answer: that relators were the people who nominated Johnson and Weld. Relators have provided more than sufficient evidence in support of their statement that they were the group that nominated Johnson and Weld, and respondent has offered evidence that only confirms their allegation.

{¶ 30} Whether or not relators want to be called the "Libertarian Party"—they do not say so in their complaint—is not dispositive. That they received support from a group calling itself the Libertarian Party of Ohio is equally irrelevant. The Revised Code says nothing about that. These five people could call themselves the Pizza Party, for all that matters. Left with the plain language of the statutes, the factual questions stated above, and the plain evidence in the record, I would grant the writ and order the relief requested.

{¶ 31} Accordingly, I dissent.

—————————

Mark R. Brown, for relators.

Michael DeWine, Attorney General, and Halli Brownfield Watson and Jordan S. Berman, Assistant Attorneys General, for respondent.

—————————