OPINION
{¶ 1} On March 1, 2002, appellees, Robert and Wilma Snider, filed a petition for the annexation of 227.296 acres of land from Violet Township to appellee, Village of Canal Winchester. Appellant, Alyce Lucille Thornton, owns 100± acres; appellees Snider own the remaining 127± acres. On June 11, 2002, the Fairfield County Board of County Commissioners conducted a hearing on the annexation petition. On August 20, 2002, the board passed Resolution No. 02-08.20.h approving the annexation.
 {¶ 2} Appellant Thornton appealed the board's decision by filing both an R.C. 709.07 injunction action and an R.C. Chapter 2506 administrative appeal, depending on which law applied. Following a series of trial court decisions and appeals, the law determined to be applicable to this case is former R.C. 709.07; therefore, the injunction action was the appropriate vehicle to challenge the annexation petition. See, Case No. 02CV756, App. Case Nos. 03CA63/03CA64, and Thornton v. Salak,112 Ohio St.3d 254, 2006-Ohio-6407.[1]
 {¶ 3} Following a remand, the trial court denied the injunction. See, Entry filed December 27, 2007.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 5} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN FINDING APPELLANT WAIVED OBJECTIONS NOT RAISED AT THE ANNEXATION HEARING." *Page 3 
 II {¶ 6} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT FAILED TO CONSIDER ALL ERRORS IN THE COMMISSIONERS' PROCEEDINGS AND FINDINGS AND IN ITS DETERMINATION THAT THE ERRORS THAT DID OCCUR WERE NOT PREJUDICIAL TO AN OPPOSING PROPERTY OWNER."
 III {¶ 7} "TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN ITS REVIEW OF THE ORDER OF THE COUNTY COMMISSIONERS AND ITS APPLICATION OF AN IMPROPER GENERAL GOOD STANDARD."
 IV {¶ 8} "THE DECISION OF THE COUNTY COMMISSIONERS WAS NOT SUPPORTED BY A PREPONDERANCE OF THE RELIABLE, SUBSTANTIAL AND PROBATIVE EVIDENCE ON THE WHOLE RECORD, AND THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY DENYING APPELLANT'S INJUNCTION AGAINST THE ANNEXATION OF HER PROPERTY."
 I {¶ 9} Appellant claims the trial court erred in finding the objections raised in the R.C. 709.07 request for injunction were waived because of appellant's failure to raise the issues during the annexation hearing. We agree.
 {¶ 10} Former R.C. 709.07 governed injunction petitions. Subsection (A) stated the following: *Page 4 
 {¶ 11} "(A) Within sixty days from the filing of the papers relating to the annexation with the auditor or clerk as provided by section 709.033 of the Revised Code, any person interested, and any other person who appeared in person or by an attorney in the hearing provided for in section 709.031 of the Revised Code, may make application by petition to the court of common pleas praying for an injunction restraining the auditor or clerk from presenting the annexation petition and other papers to the legislative authority. The petition of a person interested shall set forth facts showing:
 {¶ 12} "(1) How the proposed annexation adversely affects the legal rights or interests of the petitioner;
 {¶ 13} "(2) The nature of the error in the proceedings before the board of county commissioners pursuant to section 709.032 or 709.033 of the Revised Code, or how the findings or order of the board is unreasonable or unlawful.
 {¶ 14} "The petition of any other person shall set forth facts applicable to division (A)(2) of this section."
 {¶ 15} We note the right to injunction is available to "any person interested, and any other person who appeared" at the annexation hearing. The burden is upon the petitioners to prove by clear and convincing evidence the matters raised [former R.C. 709.07(D)]:
 {¶ 16} "(D) The petition for injunction shall be dismissed unless the court finds the petitioner has shown by clear and convincing evidence that the annexation would adversely affect the legal rights or interests of the petitioner, and that: *Page 5 
 {¶ 17} "(1) There was error in the proceedings before the board of county commissioners pursuant to section 709.032 or 709.033 of the Revised Code, or that the board's decision was unreasonable or unlawful; or
 {¶ 18} "(2) There was error in the findings of the board of county commissioners."
 {¶ 19} The phrase "any person interested" meant any person who had been a party to the annexation proceeding and who had been aggrieved by the order of annexation. Weber v. Williams (1972), 32 Ohio App.2d 65, paragraph two of the syllabus. There was no requirement for the "any person interested" to object or present evidence. Nowhere in the statute was there a requirement that a petitioner must have objected to or argued against the annexation petition during the annexation hearing.
 {¶ 20} Appellant's October 11, 2002 injunction petition alleged the statutory grounds of R.C. 709.07 and certain administrative errors:
 {¶ 21} "20. R.C. 709.02(A) requires that the petition contain a `full description and accurate map or plat of the territory sought to be annexed.' The petition filed with the Commissioners did not contain any description of the annexation territory.
 {¶ 22} "21. The petitioners for annexation failed to provide the Commissioners with a full description or accurate map or plat of the annexation area as required by law.
 {¶ 23} "22. Any description of the annexation area that was provided to the Commissioners after the filing of the petition was not accurate, including any description presented at or after the hearing.
 {¶ 24} "23. The Commissioners did not grant the annexation petitioners leave to amend the petition, map, or legal description in this action and any amendment thereof is unreasonable, unlawful and in error. *Page 6 
 {¶ 25} "24. Any consideration of evidence by the Commissioners that was not presented included in the filing of the petition or presented at the hearing and within the statutory process is error."
 {¶ 26} Former R.C. 709.07(C) gave the trial court the right to hear "evidence upon the matters averred in the petition." This right implies that other evidence or issues may be argued to the trial court that were not part of the annexation hearing record, thereby negating the waiver argument.
 {¶ 27} It is basically conceded that appellees' legal description of the area to be annexed was inaccurate, as noted by the county engineer, however, the error was corrected during the annexation hearing. Because appellees amended their description in the thirteenth hour, we cannot find appellant's objection was waived. It is disingenuous of appellees to argue their thirteenth hour amendment should be allowed and then fault appellant for failing to object. The acceptance of the amendment was a viable objection under former R.C. 709.07(D).
 {¶ 28} Appellees also argue appellant waived any objection to ownership issues and to the deeds presented to support ownership. When the board accepted these deeds and made a finding, inter alia, of ownership, the error was preserved in the record.
 {¶ 29} Upon review, we find the trial court erred in determining appellant had waived her objections not raised during the annexation hearing.
 {¶ 30} Assignment of Error I is granted. *Page 7 
 II {¶ 31} Appellant claims the trial court erred in finding any errors that did occur were not prejudicial to her. We disagree.
 {¶ 32} Despite the trial court's determination on waiver that we have found to be in error, the trial court went on to address four procedural errors raised by appellant:
 {¶ 33} "A. The County Commissioners Erred in Granting An Annexation Petition That Did Not Contain Any Description Of The Territory Sought To Be Annexed or an Accurate Map and in Considering Evidence Received After the Hearing Was Closed.
 {¶ 34} "B. The Board Erred in Permitting The Submission Of A Description Of The Annexation Territory For The First Time At the Hearing.
 {¶ 35} "C. The Annexation Petition Did Not Contain an Accurate Statement of the Number of Owners and Was Not Signed By A Majority Of The Owners Of Territory Sought To Be Annexed.
 {¶ 36} "D. Taken Together, The Numerous Errors in The Proceedings Before the County Commissioners Require The Annexation Petition To Be Denied, By Clear and Convincing Evidence." See, Entry filed December 27, 2007.
 {¶ 37} These errors fall under former R.C. 709.07(A)(2) cited supra. As provided for in former R.C. 709.07(D), the petitioner must show "by clear and convincing evidence that the annexation would adversely affect the legal rights or interests of the petitioner," and there was error in the annexation hearing or the board's decision was unreasonable or unlawful or there were errors in the factual findings. In Cross v.Ledford (1954), 161 Ohio St. 469, 477, the Supreme Court of Ohio defined "clear and convincing evidence" as follows: *Page 8 
 {¶ 38} "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." (Emphasis sic.)
 {¶ 39} In its entry filed December 27, 2007, the trial court found the alleged procedural errors were technical in nature and did not prejudice appellant. From our review of the matter, we conclude the trial court did not err.
 {¶ 40} The first issue is the lack of a specific metes and bounds description of the area to be annexed. The Fairfield County Engineer, Frank Anderson, addressed this concern to the Board of County Commissioners in his opinion letter dated June 11, 2002:
 {¶ 41} "2. Assuming that the 1997 Conveyance Standards adopted by the Fairfield County Auditor and Fairfield County Engineer may be applied to the proposed annexation, note the following concern:
 {¶ 42} "A reference is needed as to all or any monumentation where the boundary crosses the Basil Western Rd. NW right-of-way line or centerline. This must be included so that a point of physical change in road maintenance can be established in the field. These monumentation points may be added with 30 days of annexation approval and will be helpful in future sign locations, etc. once the annexation is recorded. See the attached Section V6 of the Conveyance Standards. *Page 9 
 {¶ 43} "3. Within the legal description (copy attached) many references are made to `First Tract' or `Second Tract' without saying the owner name of the tract. I recommend for clarity that the legal be amended to say `Second Thornton Tract' or `Second Snider Tract', etc. Reading the description as written could be confusing without this change or reference being included.
 {¶ 44} "4. It might also help for clarity to always say `(by deed)' or `(calc.)' for the acreages involved since the total per deeds of 231.57 acres is shown in some places and the calculated total of 227.296 acres shown elsewhere."
 {¶ 45} On March 1, 2002, appellees gave notice of the possibility of an amendment to the annexation petition to "correct any discrepancy or mistake noted by the County Engineer or others in their examination of the petition, map, plat or description. Amendments to correct the map, plat or description may be made * * * to the Board of County Commissioners on, before or after the date set for hearing of this petition." Record Appendix at 049. On April 24, 2002, appellant's attorney wrote a letter to the board to protest the proposed annexation. Id. at 017. The attendance sheet for the annexation hearing indicates appellant was present at the hearing to speak against the annexation. Id. at 030. Prior to the commencement of the annexation hearing held on June 11, 2002, the representative of the designated agent amended the petition to include a metes and bound description. Id. at 136-137; Exhibit 1. The amendment to the annexation petition did not prejudice appellant's rights. Appellant clearly understood the area to be annexed.
 {¶ 46} The second issue is the lack of an accurate statement regarding the number of owners of the property to be annexed. The petition for annexation stated the *Page 10 
"number of owners in the territory sought to be annexed is 3." The petition was signed by appellees Robert J. Snider and Wilma Snider, each stating they owned 131± acres. Id. at 049. They also submitted a joint affidavit. Id. at 086. The plat filed along with the petition, signed by surveyor John H. Varner, verified the two Snider tracts from the "available public records, not from an actual field survey." Id. at 002, 089. There is a verification of ownership of the proposed annexation parcels as belonging to three persons, appellant and each appellee. Id. at 062. Included in the record are two deeds. One deed granted Robert J. Snider an undivided one-half interest in the two Snider parcels at issue from Raymond N. Snider and Miriam Snider (Vol. 365, p. 687). Id. at 064. The second deed granted Wilma Snider an undivided one-half interest in the same two parcels from Robert J. Snider (Vol. 670, pp. 430-431). Id. at 066. The question raised and argued by appellant from a review of the granting instruments is whether appellee Robert J. Snider is a record landowner of the two tracts. The deeds only evidence that he owned an undivided one-half interest and he transferred that interest to appellee Wilma Snider.
 {¶ 47} Appellees argue one can find that Robert J. Snider owned the other undivided one-half interest by using first, the Sniders' own affidavits and second, the verification of the title abstract. In its entry filed December 27, 2007, the trial court found the evidence was sufficient to establish ownership:
 {¶ 48} "While one could speculate that Mr. Snider might have had only a one-half interest and therefore transferred all of his interest to his wife, such a conclusion is not the only conclusion that can be reached from the deeds. Even if the deeds standing alone could raise some ambiguity regarding Mr. Snider's ownership, there was ample *Page 11 
other evidence before the Board, in fact, more than is required by R.C. Chapter 709, to support its implied factual finding that Mr. Snider did own the property and that, therefore, a majority of the property owners had signed the petition. Thus, Petitioner's claim that the Board erred in finding that a majority of owners signed the petition for annexation must fail."
 {¶ 49} Former R.C. 709.033 governed order for annexation. Subsection (C) stated the following:
 {¶ 50} "After the hearing on a petition to annex, the board of county commissioners shall enter an order upon its journal allowing the annexation if it finds that:
 {¶ 51} "(C) The persons whose names are subscribed to the petition are owners of real estate located in the territory in the petition, and as of the time the petition was filed with the board of county commissioners the number of valid signatures on the petition constituted a majority of the owners of real estate in the territory proposed to be annexed."
 {¶ 52} Former R.C. 709.02 governed petitions for annexation of adjacent territory and stated the following in pertinent part:
 {¶ 53} "The owners of real estate adjacent to a municipal corporation may, at their option, cause such territory to be annexed thereto, in the manner provided by sections 709.03 to 709.11 of the Revised Code. Application for such annexation shall be by petition, addressed to the board of county commissioners of the county in which the territory is located, and signed by a majority of the owners of real estate in such territory. Such petition shall contain: *Page 12 
 {¶ 54} "(A) A full description and accurate map or plat of the territory sought to be annexed;
 {¶ 55} "(B) A statement of the number of owners of real estate in the territory sought to be annexed;
 {¶ 56} "(C) The name of a person or persons to act as agent for the petitioners.
 {¶ 57} "As used in sections 709.02 to 709.21 and 709.38 and 709.39 of the Revised Code, `owner' or `owners' means any adult individual seized of a freehold estate in land who is legally competent and any firm, trustee, or private corporation that is seized of a freehold estate in land; except that individuals, firms, and corporations holding easements are not included within such meanings; and no person, firm, trustee, or private corporation that has become an owner of real estate by a conveyance the primary purpose of which is to affect the number of owners required to sign an annexation petition is included within such meanings."
 {¶ 58} The trial court correctly noted recorded deeds are not the only way to prove ownership, and the applicable statutes do not require deed authentication.
 {¶ 59} The record contains appellees' joint affidavit, their verification of ownership, and the abstractor's affidavit regarding the ownership of the parcels. No evidence was presented to refute these assertions. Appellant failed to show by clear and convincing evidence that the findings of ownership were in error.
 {¶ 60} Upon review, we find the trial court did not err in finding any procedural errors did not prejudice appellant.
 {¶ 61} Assignment of Error II is denied. *Page 13 
 III, IV {¶ 62} Appellant claims the trial court erred in applying an incorrect standard for determining "general good," and erred in determining the board's decision to grant the annexation was supported by the record as a whole. We disagree.
 {¶ 63} Former R.C. 709.033(E) mandates that a board of county commissioners must affirmatively find that "the general good of the territory sought to be annexed will be served if the annexation petition is granted."
 {¶ 64} Appellant argues "[w]hile the benefits to the annexation territory must be considered, the detriments must also be considered when there are owners who object to the annexation." Appellant's Brief at 20. Appellant argues the trial court erred in failing to consider her desires, "the detriments she will suffer and commercial advantages she will lose if her property is annexed to Canal Winchester." Id. at 21.
 {¶ 65} In its entry filed December 27, 2007, the trial court found, "There is nothing in the old annexation statute that would require that the nature of the `general good' requirement or any other statutory element is different for a single-owner annexation."
 {¶ 66} We concur with appellant's position that it was error to equate a single ownership annexation to the analysis required by multiple ownership annexation. In a previous appeal, the dicta at ¶ 23-24 addressed a one hundred percent annexation petition only. See, In re:Petition to Annex 100.642 Acres of Violet Township into Village of CanalWinchester, Fairfield App. No. 03CA073, 2004-Ohio-7092.
 {¶ 67} In the case sub judice, the board made no specific findings on the general good analysis other than a conclusory statement. Therefore, the record on this issue must be examined to see if it supports the conclusion. *Page 14 
 {¶ 68} First, it was stipulated that appellant would be "adversely affected" by the granting of the annexation petition. Second, we have appellees' opinion in support of the annexation, agreeing it would positively impact their property. Lastly, the Village of Canal Winchester passed a resolution pursuant to former R.C. 709.031(B) listing the services that would be provided to the annexed property. These services include police via the Franklin County and Fairfield County Sheriffs; fire and EMS services via the Violet Township Fire Department pursuant to the Cooperative Economic Development Agreement (hereinafter "CEDA") between the Village of Canal Winchester and Violet Township; sanitary sewer via the Village of Canal Winchester as development occurs pursuant to the CEDA or alternatively, via Fairfield County; and water via water lines owned by the Village of Canal Winchester as well as Fairfield County water lines. Record Appendix at 038-039.
 {¶ 69} The Mayor of the Village of Canal Winchester filed an affidavit in support of the annexation. Id. at 080. This affidavit outlined the services offered by the Village to people as well as property, including engineering services, street maintenance, economic development, planning and zoning services, state and federal programs, parks and recreation, a waste management agreement, and utility services to the proposed annexed property. The CEDA was also part of the record. Id. at 096-118.
 {¶ 70} During the annexation hearing, Gerald Draper, counsel for the Violet Township Board of Trustees, stated Violet Township supported the annexation. Id. at 139.
 {¶ 71} Appellant's counsel spoke and cited pending litigation on the CEDA to be the issue. Id. at 145. Appellant believed the CEDA prohibited "hostile annexation." Id. *Page 15 
at 148. Appellant testified, stating she believed the incentives to go into the City of Pickerington outweighed any benefits available from the Village of Canal Winchester. Id. at 153. Appellant's daughter pointed out the tax rate is greater in the Village of Canal Winchester (2%) than the City of Pickerington (1%). Id. at 154.
 {¶ 72} Attached to appellant's brief is an analysis of the comparative services of the Village of Canal Winchester versus the CEDA. See, Appendix J. This chart was not presented at the annexation hearing however, the issues raised therein were argued to the board.
 {¶ 73} When making a general good analysis, the opinions of the parties and an analysis of them are basically subjective. The CEDA provides benefits via annexation only if all of the property owners agree to it. The procedures in R.C. Chapter 709 et seq. permits annexation with only a majority of the property owners in agreement.
 {¶ 74} Appellant's property is adjacent to the Village of Canal Winchester, and is not adjacent to the City of Pickerington. We therefore find any possible analysis of the general good vis-à-vis the two incorporated areas to be non-germane. The issue was whether the annexation to the Village of Canal Winchester would be for the general good of the territory. Without the majority-based annexation, the benefits of the CEDA would not be available to the proposed annexation.
 {¶ 75} We find the only negative voiced at the annexation hearing was the difference in tax percentage. As appellant's daughter testified to the tax rate in the context of "I'm still working," we presume this is an income tax rate which would be lower if the property was annexed to the City of Pickerington. *Page 16 
 {¶ 76} Upon review, we find the trial court's general good of the territory determination is supported by reliable, credible evidence.
 {¶ 77} Assignments of Error III and IV are denied.
 {¶ 78} The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby affirmed.
 Farmer, J. Gwin, P.J. and Edwards, J. concur. *Page 17 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio is affirmed.
[1] All references to R.C. Chapter 709 statutes will pertain to the statutes in effect prior to March 27, 2002. *Page 1